51 So.2d 819 (1951)
MARKS
v.
HIGHWAY INS. UNDERWRITERS et al.
No. 7639.
Court of Appeal of Louisiana, Second Circuit.
April 5, 1951.
*820 Drew & Drew, Minden, for plaintiff-appellant.
Irion & Switzer, Harry A. Johnson, Jr., Blanchard, Goldstein, Walker & O'Quin and Ben C. Dawkins, Jr., all of Shreveport, for defendants-appellants.
KENNON, Judge.
Alleging that he was a fare paying passenger on a bus operated by Bill Gutherie and that he suffered serious injuries as a result of the collision between the Gutherie bus and a truck belonging to R. E. Claunch, plaintiff, C. O. Marks, brought suit against Gutherie and his insurer and against Claunch and his insurer, seeking to recover judgment, in solido, against the four defendants in the amount of $23,600.
Plaintiff alleged that his injury occurred when the Claunch truck struck the Gutherie bus and "sheared off the entire left side of said bus;" that the accident resulted from the failure of Claunch and his driver to keep the brakes working properly on the truck; in driving at an excessive rate of speed and in failing to keep a proper lookout. The petition charged that Gutherie, driver of the bus, was negligent in failing to maintain a proper lookout, in failing to keep his bus on the right side of the road and to otherwise act to avoid the accident after noting the course and path of the oncoming Claunch truck.
The answer of Gutherie and his insurer admitted the occurrence of the accident and that plaintiff was a fare paying passenger. This answer denied all allegations of negligence on the part of Gutherie, and set forth that the accident resulted solely from the negligence of one O. L. Polk, driver of the Claunch truck, in suddenly and negligently driving this truck to its left of the center line and into the lane of traffic upon which Gutherie's bus was being operated in the opposite direction, and striking Gutherie's bus despite every effort on Gutherie's part to avoid the accident by applying his brakes and turning to the right.
Claunch and his insurer denied that the driver of the Claunch truck was guilty of any negligence whatever; asserting that the truck on the date of the accident was in perfect mechanical and operating condition and proceeding normally along the highway at the time it approached the Gutherie bus; that the accident occurred when the driver of an automobile, whose *821 identity was unknown to these defendants, abruptly and without warning stopped his car in front of Claunch's truck, whose driver immediately applied his brakes, which for some unknown reason, for the first time, failed to function properly, causing the left front wheel to lock and throw the truck a short distance to its left across the center line of the highway; that the Gutherie bus at that time was "several hundred yards to the east;" that the Claunch driver, seeing the Gutherie bus continuing on at the same speed, turned his truck sharply to the right and succeeded in getting the tractor portion of the truck back on its own side of the highway, but due to the Continuing approach of the Gutherie bus without slowing or turning, the left side of the bus ran into and against the left front corner of the Claunch trailer.
Answering further, Claunch and his insurer asserted that the accident resulted solely from the fault of the driver of the Gutherie bus, who, notwithstanding that there was ample time to slow his bus, to stop same and drive it to his right and avoid collision with the trailer portion of the Claunch truck, nevertheless did nothing to avoid the accident, failing to apply his brakes, failing to slow down or stop, failing to turn to his right, and proceeding recklessly at the same rate of speed after he saw or had ample opportunity to see the position of the Claunch truck.
Consolidated in the District Court for the purpose of trial and in this Court for argument were the suits of four other passengers on the Gutherie bus against the same defendants named in the present suit. Also consolidated for trial with these suits was the action of Gutherie, owner of the bus, against Highway Insurance Underwriters, liability insurer of the Claunch truck.
The District Court concluded that the proximate cause of the accident and the resulting injuries to this plaintiff and the other plaintiffs in the consolidated suits was the fault of "either the bad condition of the brakes on the Chevrolet (Claunch) truck or bad driving by Polk (driver of the Claunch vehicle)." The District Court found the bus driver without fault and plaintiff's demands against Gutherie and his insurer were rejected, as were the demands of all other plaintiffs in the consolidated cases.
The District Court awarded Marks, present plaintiff, judgment in solido against defendant Claunch and his insurer in the amount of $5,409.50 and gave further judgment in favor of plaintiff and against Claunch individually for an additional $5,409.50. In separate judgments other awards were made in favor of the other plaintiffs in the consolidated suits so as to bring the total in solido judgments against Claunch and his insurer up to $20,000, the limit of liability in the policy of coverage, with approximately an equal additional amount awarded in each case against Claunch individually.
The District Court awarded Gutherie, driver and owner of the bus, a judgment against Claunch's insurer, under the property damage feature of its policy, for the $695.39 damage to the Gutherie bus.
Claunch and his insurer obtained and perfected a suspensive appeal from all of the in solido judgments. Plaintiffs appealed from the judgments insofar as their demands were rejected.
Defendant Gutherie for three years or more prior to the occurrence of this accident on September 24, 1949, had operated a passenger bus service between Minden and the International Paper Mill plant at Cullen, near Springhill, Louisiana. Shortly before daylight on this September day his thirty passenger bus left Minden and proceeded in a westerly direction and had completed the crossing of the bridge just east of the main bridge over Dorcheat Bayou when the driver noted the approach of the Claunch Chevrolet truck which, when it had reached a point something less than fifty feet from Gutherie, suddenly veered to its left, across the highway center line, and into the path of the Gutherie bus. Gutherie, upon perceiving the unusual maneuver, promptly veered his bus to the right. In the hope of avoiding the impending head-on collision, Polk, driver of the Claunch truck, released his brakes and steered his vehicle *822 back to the right and succeeded in getting the tractor portion out of the Gutherie lane of traffic, but the left front corner of the trailer struck the Gutherie bus on its left side at a point slightly in rear of the driver and laid open that side of the bus, the heavy trailer body causing serious injuries to the passengers sitting in the left-most seats. These injured passengers are plaintiffs in this and the consolidated suits arising out of the same accident.
Gutherie testified that the Claunch truck was thirty-five or forty feet away from him when it suddenly, without reason, turned to the left into his lane of traffic; that he applied his own brakes and pulled the bus over to the right in an effort to avoid the collision. His testimony that the truck was approximately thirty-five feet away at the time when it came across the center line, and that he promptly pulled his bus to the right, was corroborated by Thurman Green, L. L. Jarrett, W. C. Tomlinson and Jim Culbertson, who were passengers on the bus. By stipulation of counsel, it was admitted that five other passengers on the bus would, if sworn as witnesses, testify to substantially the same facts. Mrs. Inez Elkins, one of the plaintiffs, who was sitting next to the window, did not estimate the distance the Claunch truck was from the bus when it crossed the center line, but testified that it "seemed very close to me." She further testified that the truck driver cut over to the right and that the collision would have been head-on if both drivers had not turned. She had been a rather regular passenger on the Gutherie bus for approximately three years and knew of no other accident in which Gutherie was involved.
Polk, driver of the Claunch vehicle, admitted that his truck went over into the left lane and into the path of the Gutherie bus, but said the turn to the left was the result of his application of the foot brake, which braking was made necessary by the driver of an unindentified vehicle which, Polk testified, stopped suddenly in front of him.
At one point in his testimony Polk stated that his vehicle was thirty-nine feet from the bus at the time it veered to the left, but later testified and reiterated that the truck traveled a distance of only ten or fifteen feet between the initial application of the foot brake, the locking of the wheel and turning of the truck into the left side of the highway, his releasing of the brake and pulling the front wheels back to the right, the crash into the Gutherie bus and the stopping of his own truck. Polk testified that the brakes worked perfectly on the rest of the trip to Farmerville, Louisiana and back to Fort Worth, Texas, a distance of well over two hundred miles, and that he had never had any trouble before with the truck or the brakes on same.
R. E. Claunch, owner of the truck and trailer, testified that he had never had any trouble before with the brakes on this truck, which he had purchased in 1945; that there had been no trouble resulting from wheel locking before; that he tested the brakes after the accident and found them in perfect working order, and that he continued to use the truck without change or difficulty until the time he traded it in nearly ten months after the accident. He testified that the brake locking could possibly have been caused by the introduction of some foreign element into the braking mechanism, possibly a piece of gravel or drops of oil.
In support of Claunch's theory that a piece of gravel may have gotten into the braking mechanism, defense counsel brought out the fact that the truck driver had driven off the highway and on to gravel shoulders or parking areas at three or four truck stop restaurants for coffee and food.
Defendant Claunch, on cross examination, testified that he had discharged Polk, the driver of the truck, upon his return from the trip, admitting, at least in some degree, that he considered the accident resulted from the negligent acts of the driver rather than from any mechanical defect in the brakes or other mechanism of the truck. He further admitted on cross examination that he determined the cause of the accident "* * * was the fault of the driver, rather than the fault of the truck he was driving * * *."
*823 The evidence clearly establishes that the Claunch truck crossed the center line of the highway and blocked a portion of the left lane at a time when the Gutherie bus was less than fifty feet away and when it was too late for Gutherie to avoid the resulting collision. The defense that this turning to the left and into the bus's side of the highway was caused by a failure of the brakes to function properly is not established, the preponderance of the testimony being that the truck and its braking system were in excellant mechanical condition and operating order prior to the accident and subsequent thereto It is true that the testimony shows that the truck had turned off the pavement at several truck stops, and that it had been lubricated the day before. However, such testimony did not go beyond establishing a possibility that the brakes on the truck were temporarily affected by the presence of a pebble or a stray bit of lubrication.
Plaintiff having clearly established by a preponderance of the evidence that defendant's truck was being operated on the wrong side of the highway at the time of the collision, the defendant and his insurer must be held liable unless their asserted defense (that the truck brakes were defective due to no fault of the owner or his employees) was likewise established by a reasonable preponderance of the evidence. The weight of the evidence is against defendants on this point.
Counsel for defendants has cited the case of Ross v. Tynes et al, La.App., 14 So.2d 80, as authority for the proposition that a defendant whose vehicle gets out of control or causes injury because of mechanical defect not discoverable by ordinary inspection is not liable for the resulting injuries. Counsel correctly sets forth the principle of law announced in this cited case. However, it is not decisive of the present case because the evidence did not establish the existence of a mechanical defect in the Claunch truck or its braking system.
We next consider whether the bus driver, Gutherie, was at fault. Both vehicles were being operated at a speed of between twenty-five and thirty-five miles per hour.
Granting that Gutherie saw the unusual maneuver of the truck when it was forty to fifty feet away, he still had less than a second in which to perceive the danger, decide upon his course of action and act accordingly.
Counsel cites the well recognized Louisiana rule that where a passenger in a public conveyance is injured in an accident, the burden is upon the carrier to show its own freedom from fault. This rule was announced in the case of Cusimano v. New Orleans Public Service, Inc., 170 La. 95, 127 So. 376. The rule that a common carrier of passengers by motor bus is required to exercise the highest degree of care was recognized by this Court in the case of Brown v. Homer-Doyline Bus Lines et al., La.App., 23 So.2d 348, and counsel for one or more of the plaintiffs cited that case, in which the Court held the common carrier liable for injuries sustained by its passengers when the bus driver observed an obviously recklessly driven vehicle coming in his direction while the vehicle was still two hundred yards away. The case before us is distinguishable from the Brown case, supra, Manley et al v. Hammons et al, La.App., 20 So.2d 817, and the other cases cited in the Brown opinion, in that Gutherie, the bus driver, saw nothing unusual in the appearance or conduct of the Claunch truck until it suddenly crossed the center line of the highway at a point less than fifty feet in front of him. The evidence shows that Gutherie promptly turned his vehicle to the right. There was no evidence upon which a finding could be made that Gutherie ignored an apparent danger as was true in the Brown case and the other cases therein cited.
The preponderance of the evidence supports the conclusion of the District Judge that the proximate cause of the accident and the resulting injuries to this plaintiff and the other plaintiffs in the consolidated cases was the fault of the driver of the Claunch truck, and that Claunch is liable for all the damages done and his insurer, Highway Insurance Underwriters, is also liable within the $20,000 limitation of the policy. The evidence likewise supports the finding of the District Court that the operator of *824 the bus was without fault and that the demands of all plaintiffs against him and his insurer were properly rejected.
As noted in the well written opinion of the District Court, a difficult task is presented in estimating the proper award for each of the various plaintiffs and in the determination of the share each should have in the $20,000 maximum for one accident provided in the Highway Underwriters policy.
The present plaintiff, in addition to less serious injuries, sustained a fracture of the left arm between the shoulder and elbow which had not united at the time of the trial nearly ten months after the accident, and which the medical testimony indicated will not unite without another operation which would cost an estimated $600, and likely leave some permanent partial disability. After the accident plaintiff was unable to return to work. The testimony supports the award in his favor and against Claunch, which was itemized by the District Court as follows:

Dr. C. M. Baker $ 425.00
Minden Sanitarium 600.00
Loss of wages to date of trial 2,651.00
Future loss of wages 2,643.00
Pain and suffering 1,500.00
Permanent partial disability 3,000.00
 __________
 $10,819.00

Lewis A. Ray, Jr., plaintiff in consolidated case No. 7642, 51 So.2d 819, received in addition to minor injuries, a fracture of the left leg at the knee, which required an operation of two and one-half hours duration, and which left his knee still stiff with likelihood of some permanent disability. The following itemized award of the District Court in his favor and against Claunch is justified by the evidence:

Dr. S. M. Richardson $ 335.00
Dr. F. J. Macpherson 375.50
Minden Sanitarium 353.00
Loss of wages 1,428.00
Pain and suffering 1,500.00
Partial permanent disability 3,000.00
 _________
 $6,991.50

Mrs. Inez Elkins, plaintiff in consolidated case No. 7641, 51 So.2d 819, sustained severe bruises on the left abdomen, left hip region, left thigh, left shoulder and neck, in addition to internal injury to a kidney as indicated by blood in the urine after the accident and pus for a considerable time thereafter. At the time of the trial she had returned to work but still suffered pain in her neck, shoulder and back. The following itemized damages in her favor and in favor of her husband, Virgil Elkins, for expenses, are justified by the record:

In favor of Mrs. Elkins:
Loss of earnings $1,150.00
Pain and suffering 1,500.00
Temporary total disability 1,000.00
Permanent partial disability 3,000.00
 _________
 $6,650.00
In favor of Mr. Elkins:
Sanitarium bill $ 302.75
Doctor bills 217.00
 ________
 $ 519.75

Homer J. Simpson, plaintiff in consolidated case No. 7640, 51 So.2d 819, suffered a compound comminuted fracture of the upper third of the left radius, severe contusion of the left forearm and fracture of the prorsad part of the first, second and fifth metacarpus of the fingers of the left hand, and a fracture of the hamatum bone, together with shock and a resultant pain in his back. He developed excessive bony tissue at the site of the fracture which prevented rotation of his hand and necessitated an operation for removal of the excess tissue, leaving him with some limitation of motion in the rotation of his left hand and forearm and a remaining bony growth on the top of his hand. His disability is permanent in nature and the itemized award of the District Court in his favor is sustained by the record:

Sanitarium bills $ 298.55
Doctor bills 358.50
Loss of earnings 1,317.60
Pain and suffering 1,500.00
Permanent partial disability 7,275.00
 __________
 $10,749.65

*825 Mrs. Mamie S. Burke, plaintiff in consolidated case No. 7643, 51 So.2d 819, whose husband died twenty-four days after the accident with bronchopneumonia listed as the immediate cause of death, sued for damages summarized as follows:

Pain and suffering of her husband $ 7,500.00
Loss of his love, affection and
companionship, and mental
suffering 10,000.00
Loss of his support 15,000.00
Medical and funeral expenses 764.85
 __________
 $33,264.85

Mr. Burke had been in ill health for some time prior to the accident and had not worked from the latter part of July, 1949 to the time of the accident. During this period he had been treated by Dr. G. H. Cassity, who testified that his treatment, beginning August 20, 1949, had been mainly for a nervous breakdown. He testified that in August Mr. Burke was nervous, upset, prostrated and generally weak, and that the treatment consisted of the use of heavy intravenous shots of vitamin B-1 complex and tonics, which had resulted in a condition "considerably improved over what he was when I first started treating him."
In the collision the ripping corner of the heavy trailer struck Mr. Burke on the left hip, side and back. He was carried to the Minden Sanitarium and treated there for thirteen days. At the end of that time, although he was in an extremely weakened condition and advised to stay in the hospital by his doctor, he left the sanitarium and went with his wife to his mother's home near Cotton Valley, Louisiana, where he remained for three or four days before returning to his own home in Bossier City, where he soon took a turn for the worse. On October 15th a doctor was summoned but didn't find time to come until the following day. The doctor found Mr. Burke suffering intense pain in his left side, hip and back. Sedatives were administered. Mr. Burke's condition grew worse and he was carried first to the Charity Hospital in Shreveport and then to the Veterans Administration Hospital at North Little Rock, Arkansas, where he arrived on October 18th. He died there after midnight on the night of October 21-22 with bronchopneumonia listed as the cause of death. Dr. C. M. Baker, who attended Mr. Burke at the Minden Sanitarium, testified that the injury he sustained was likely to make him more susceptible to local infection and to acute specific infectious diseases and that his injury could have played a "big part" in his death. Dr. Cassity, who treated Mr. Burke prior to the injury and who saw him after the injury and before he was carried to the Charity Hospital, testified that the injury could "have been an active cause of his death, or may have been a contributing cause." The District Court found that the medical testimony preponderated in favor of the conclusion that Mr. Burke's death was the result of his injuries, though its immediate cause was pneumonia. Under the circumstances disclosed by the record, we find that the accident was a contributing cause of his death, and that his widow should recover even though his general weakened condition prior to the accident and the subsequent pneumonia were also important contributing factors to the chain of events that resulted in Mr. Burke's death.
The judgment in favor of Mrs. Burke was itemized as follows:

Minden Sanitarium $ 133.85
Dr. C. M. Baker 131.00
Ambulance 7.50
Pain and suffering of her husband 1,500.00
Loss of husband's support and
companionship 2,500.00
 _________
 $4,272.35

While we are reluctant to disturb the finding of our learned and competent brother of the District Court, and recognize the fact that plaintiff's husband's health during the months immediately preceding the accident was such as to make the loss of financial support less than in the ordinary case, we feel that the deprivation of his companionship was a real loss and that the award to her against the defendant Claunch for the loss of the support *826 and companionship of her husband should be increased to $4,500.
In view of the increase in the award to Mrs. Mamie S. Burke, it becomes necessary to amend the judgment against the Highway Insurance Underwriters and in favor of the listed plaintiffs in the consolidated cases as follows:

In favor of C. O. Marks $ 5,152.54
In favor of Lewis A. Ray, Jr. 3,329.46
In favor of Mrs. Inez Elkins 3,167.06
In favor of Virgil Elkins 247.18
In favor of Homer J. Simpson 5,119.21
In favor of Mrs. Mamie S.
 Burke 2,984.55
 __________
 $20,000.00

For the reasons assigned, the judgment appealed from in this case in favor of the plaintiff, C. O. Marks, and against the defendants, R. E. Claunch and Highway Insurance Underwriters, is amended to read $5,152.54, and the judgment in favor of plaintiff, C. O. Marks, and against defendant, R. E. Claunch, is amended to read $5,666.46. In all other respects the judgment is to remain as written. The judgment as amended is affirmed, with costs of both courts.