83 So.2d 485 (1955)
Andrew C. THOMAS, Plaintiff-Appellee,
v.
GREAT AMERICAN INDEMNITY COMPANY, Defendant-Appellant.
No. 8426.
Court of Appeal of Louisiana, Second Circuit.
November 2, 1955.
Rehearing Denied November 29, 1955.
Morgan, Baker & Skeels; Shreveport, for appellant.
*486 William H. Parker, Shreveport, for appellee.
AYRES, Judge.
This is a suit for damages for personal injuries tried before a jury. Pursuant to the jury's verdict, there was judgment in plaintiff's favor in the principal sum of $10,000, from which defendant appealed. Plaintiff has answered the appeal and prayed that the award be increased to $25,000.
The sole ground of negligence charged to defendant's assured is that, in the operation of the automobile which struck plaintiff at the assured's filling station at the southwest corner of the intersection of Marshall Street and Highland Avenue in the City of Shreveport, the assured, as the driver of said automobile, was not keeping a proper lookout. Defendant denied said charge of negligence, and, in the alternative, plead contributory negligence on the part of plaintiff in that, while walking north and on the sidewalk paralleling and adjacent to Marshall Street towards the Highland Sanitarium, in passing the station, plaintiff left a place of safety on the sidewalk and walked onto the premises of the service station directly into the aforesaid automobile driven by defendant's assured.
The accident occurred after the onset of darkness December 21, 1954, at approximately 7:15 P. M. Assured's station is constructed in the usual and customary manner for automobile service stations, located at the intersection of two streets, in that its concrete surface extends over the premises to the curb line of both street and avenue for the purpose of affording a means for automobile entrance and departure to and from the premises by the way of both street and avenue. There is no well defined line of demarcation between the sidewalk and the service station property and the concrete ramps extending to the curb other than the usual lines and expansion joints customarily found in concrete work. On the filling station premises are three gasoline pumps installed in a row on an "island", an uplifted surface, situated diagonally across the premises, the eastern end of which is located 14 feet from the sidewalk on Marshall Street, and the west end 16 feet from Highland Avenue.
Plaintiff's wife was seriously ill in the Highland Sanitarium, which is located directly across Highland Avenue to the north of the filling station, and when the accident occurred plaintiff was returning to the Sanitarium after having taken his evening meal in a cafe some two blocks beyond the filling station. As plaintiff reached a point a few feet south and east of the end of the battery of gasoline pumps, he was struck and knocked to the concrete pavement by an automobile driven at the time by C. T. Murphy, owner and operator of the station, who was moving the vehicle from one of the pumps to another position on the premises where it would be out of the way of customers seeking gasoline service. At the time the premises were well lighted.
In defendant's version of the accident, he stated that after servicing a customer's car at the gasoline pump, he looked, without seeing anyone coming, whereupon, after glancing back the other way, he stepped into the car, which was facing in an east or southeasterly direction towards Marshall Street, started it up and proceeded to turn left in order to get a sufficient distance from the gasoline pumps to miss them in again turning to his right. In so doing, after he turned sharply to the right, he struck plaintiff, who fell to the concrete on his left side and rolled over. The car was stopped immediately. After the impact, plaintiff's body was lying on the concrete, his head towards the street and his feet 3 or 4 feet from the car.
While it appears that plaintiff encroached upon the service station property, yet it could have been to the extent, at the most, of only a few feet inasmuch as the distance between the sidewalk and the nearest pump was 14 feet and the automobile was being maneuvered in a swing to the left and then to the right around the pump to the place where it was to be parked. No negligence on plaintiff's part could be attached as a result of this fact. As stated, there was *487 no clear line of demarcation between the sidewalk and the service station property, both forming an even concrete surface. The headlights on the automobile were not turned on and Murphy did not see plaintiff until the car struck him.
In passing the station, plaintiff did not remember whether he was just on or just off of the sidewalk, when Murphy got into the car, closed the door, and as he stated, ran right into him without his realizing he was about to be struck until the car hit him. No horn was blown or any signal given of the driver's intention to proceed forward into the area where plaintiff was walking.
The conclusion is inescapable that the sole and proximate cause of the accident is that Murphy was not keeping a proper lookout and, in fact, did not look at all, according to his own admission, in that direction after he got in the car either before or after starting the car. Had he been taking due precaution, he would have looked in plaintiff's direction, and had he looked he would have seen plaintiff before the car struck him. There is not the slightest ground advanced as an excuse for his failure to see plaintiff approaching along or near the sidewalk. Defendant is charged with seeing what he should have seen had he exercised due precaution in looking.
The fact that plaintiff may have slightly encroached upon the service station property is not shown, under the circumstances, to be unusual for pedestrians in passing filling stations in view of the lack of any showing why pedestrians should in this particular location be confined strictly to the sidewalk. This conduct, however, on the part of plaintiff was neither a cause nor a contributing cause to the accident and does not absolve Murphy of his gross negligence as the sole and proximate cause of the accident.
This case presents next for determination the quantum of damages. As frequently happens in cases of this kind, the award is attacked as inadequate by plaintiff and as excessive by the defendant. Unfortunately, no perfect rule has been devised that would fit all cases. The establishment of such a rule appears humanly impossible. Each case is to be determined upon its own facts, with the desire, however, for the attainment of some degree of uniformity in cases involving similar injuries and disabilities.
Plaintiff was 76 years of age at the time of the accident. Immediately following the accident he was conveyed to the North Louisiana Sanitarium, where he was confined to the hospital through January 12, 1955, after which he was confined 30 days to his residence, following which he was able to make regular calls to his doctor's office. Plaintiff described his injuries as a fractured shoulder and a crushed arm, with bruises fairly well over the body, particularly in his chest and side of his body, hips and legs, and particularly his right knee. His left arm and hand were swollen, having the appearance of a solid blood clot. That plaintiff suffered severely and will continue to experience some pain and discomfort, particularly in his shoulder and knee, is amply established by the record. Permanent injuries were sustained by him to his shoulder and knee, as a result of which he is unstable in his walk, rendering him likely to stumble and fall, which, the record establishes, has already happened on two occasions.
Dr. I. F. Hawkins, plaintiff's physician, described the fracture of the bones of plaintiff's shoulder as being very severe, with an unusual hemorrhage down to the forearm, producing considerable damage to the soft tissues. Bruises and contusions over the right knee, chest and back, with more than the usual pain ordinarily associated with a single blow or fracture as the trauma extended over the entire body, were noted by the physician, who was of the opinion on the date of trial, May 23 and 24, 1955, that, so far as manual labor was concerned, plaintiff was 100 percent disabled, which he attributed to the injury sustained to his shoulder and knee. In his estimation, a disability of 40 percent to the shoulder and 5 percent to the knee was permanent.
*488 Dr. Ford J. MacPherson, who examined plaintiff April 4, 1955, concluded with reference to plaintiff's arm "That's not a very good arm, and it's not a very bad arm. It can function fairly well, but it certainly lacks a lot", and as to the knee, it was his opinion that plaintiff had scuffed the lining of the knee, which left him with a bit of pain and restricted motion. His opinion was that after the maximum improvement plaintiff would suffer about 20 percent loss of the use of his shoulder after 4 to 6 months of treatment.
Plaintiff expended $639.80 for medical and professional care and treatment, was hospitalized for 22 days, afterwards confined to his home for 31 days, and was undergoing treatment at the time of the trial. Plaintiff had led an active life but had apparently retired at the time of the accident.
In support of its contention that the award is excessive, defendant has cited the following cases: Moss v. St. Paul-Mercury Indem. Co., La.App., 35 So.2d 867; Marks v. Highway Ins. Underwriters, La.App., 51 So.2d 819; Bankston v. Baton Rouge Bus Co., Inc., La.App., 58 So.2d 232; Davis v. Midwest Dairy Products Corp., La.App., 58 So.2d 741, and Webb v. Globe Indem. Co., La.App., 61 So.2d 235. After reviewing these and other authorities and giving due consideration to the nature, extent and duration of the injuries sustained by plaintiff and the physical pain and suffering that he has experienced as a result of the accident, together with the discomfort and inconvenience he will inevitably suffer hereafter, we have concluded that the award is excessive and that an award of $7,000 is ample and adequate and more consistent with awards in comparable cases. He should, of course, recover expenses for medical and professional care and treatment occasioned by the accident.
For the reasons assigned, the judgment appealed is amended by reducing the award to $7,639.80, and, as thus amended, is affirmed.
Appellee is cast with the costs of this appeal.
Amended and affirmed.