## TUSCANY v. U. S. STANDARD PRODUCTS CO.

No. 14391.

Court of Civil Appeals of Texas. Dallas.

Sept. 28, 1951.

Rehearing Denied Oct. 26, 1951.

John E. V. Jasper, Carter & Gallagher, and Fowler Roberts, all of Dallas, for appellant.

Curtis White, of Dallas, for appellee.

BOND, Chief Justice.

This is a suit for damages, instituted by plaintiff Frank H. Tuscany (appellant) against the U. S. Standard Products Company (appellee), as the result of plaintiff's wife self-injecting into her own body, by hypodermic needle, a drug known in the evidence as estrogenic hormones, manufactured and processed by the defendant. It is uncontroverted that the drug was prepared and sold by the defendant to the retail trade in the usual and ordinary course of business and that a vial of the liquid was sold by a local pharmacy to the plaintiff's wife. The plaintiff alleges that his wife sustained the injuries as the result of negligence on the part of the defendant "in the manner of preparation" of the drug; and further that said negligence of the defendant in the preparation of said drug breached the defendant's implied warranty that the drug was manufactured and prepared in a prudent manner, that it was harmless and contained no impure substance.

The cause was tried to a jury and, in answer to special issues, the jury found:

(1) That the estrogenic hormones in question contained an impure substance which was injurious to the human body. (2) That the presence of such impure substance was not due to the negligence of the defendant in preparation of same. (3) That Mrs. Tuscany used ordinary care for her own safety in the manner in which she used the hormones. (4) That Mrs. Tuscany exercised ordinary care for her own safety in injecting the fluid from the vial containing estrogenic hormones into her body after the first injection on August 21, 1948. (5) That Mrs. Tuscany did not fail to exercise ordinary care for her own safety in failing to consult a doctor prior to the time she did consult a doctor. (6) That the condition of Mrs. Tuscany did not result from an allergy. (7) That the injury to Mrs. Tuscany was not the result of an unavoidable accident. (8) That the damages sustained by Mrs. Tuscany was the sum of $2,950.

On the findings of the jury, on motion timely filed by the defendant, the court entered judgment that plaintiff take nothing by his suit.

It will be seen that the jury answers to the special issues directly negative contributory negligence of plaintiff's wife in administering the drug to herself, and in equal terms and effect affirmatively found that the defendant was not negligent in the manner of preparation of the drug. The appeal is predicated upon the propositions, (1) that the defendant was negligent in the manner of its preparation of its product under the doctrine of res ipsa loquitur. There was no other issue of negligence on the part of the defendant submitted or requested. If the defendant is liable for the injuries to plaintiff's wife, it must be held solely on the doctrine of res ipsa loquitur,—inferable negligence in the preparation and sale of an impure drug which proximately cause the injuries—free of any contributory negligence on the part of the injured party in administering the drug to herself by self-injecting the medicine into her own body by hypodermic needle.

The weight of the inference of negligence under the rule of res ipsa loquitur, because of resulting injuries, proximate cause, and contributory negligence, are matters for determination by the trier of facts. The fact that the occurrence here involved may warrant an inference or presumption of negligence, such does not compel it; that is, the unexplained or dubious injuries do furnish circumstantial evidence for the determination of the issue by the trier of facts, but do not necessarily impel acceptance as a proven axiomatic fact. For such an inference of negligence from the standpoint of evidence, there must be reasonable evidence in the record that the occurrence arose from want of care.

In the case here the plaintiff produced no evidence of any positive act of negligence on the part of the defendant. The accident and injury to plaintiff's wife were proven and the surrounding circumstances from which it might have been reasonably inferred by the jury that the injury was the result of some negligence, —either on the part of the defendant or on the part of plaintiff's wife. It is not enough under the res ipsa loquitur rule to fasten liability on one, any more than on the other, simply because some accident and injury occurred. When all the facts connected with the occurrence fail to point to any particular act of negligence on the part of either party, as proximate cause of the injury, but merely show the state of affairs or some intervening circumstance from which an inference could reasonably be drawn that the injury was due to some cause other than the negligence of the defendant, the rule of res ipsa loquitur has no application. In Texas & Pacific Coal Co. v. Kowsikowsiki, 103 Tex. 173, 125 S.W. 34, our Supreme Court states a rule applicable to facts we think analogous to the situation here. In that case the Court said: "Negligence is not to be imputed either to him or to the defendant's other servants without proof; and a state of facts in which the cause of the accident cannot be found does not warrant a conclusion that one, rather than the other, produced it. We cannot presume in favor of one and against the other. Evidence must be brought by a plaintiff, having the burden of proof, sufficient to justify an inference of

negligence on the part of the defendant, and none such can be drawn from an occurrence which, while indicating negligence somewhere, is as consistent with the hypothesis that it was his own, or that of one in whose right he sues, as that it was that of the other party."

■ Turning to the evidence in this case bearing on the issues involved and supporting the findings of the jury and judgment of the trial court, we are of the opinion that the inference of negligence is equally as potent against plaintiff's wife for her self-injecting the drug into her own body by hypodermic needle, as against the defendant in the manufacture and processing of the drug. In the first place, it is by no means certain what brought about Mrs. Tuscany's injuries; secondly, the thing which may have done it, not within the exclusive agency or control of the defendant from the time of its manufacture until the vial was opened and used by Mrs. Tuscany; and thirdly, the facts shown are equally consistent with the hypothesis that Mrs. Tuscany's injuries were caused by some act of her own in opening the vial, exposing the contents, and injecting the fluid into her arms by hypodermic needle, as that they were caused by the defendant. The jury having found that neither the defendant nor Mrs. Tuscany was negligent as to attribute the injury to either of them, the jury's verdict that neither was guilty of negligence is, we think, a just conclusion. "The rule of res ipsa loquitur has no application, where the thing causing the accident was not under the exclusive management of the master, but was partially under that of the injured party." Brigman v. Holt & Bowers, Tex.Civ.App., 32 S.W.2d 220, 222; Davis v. Castile, Tex.Com.App., 257 S.W. 870.

Mrs. Tuscany, pertinent here, testified that for three years prior to 1948 she was under treatment by a physician for general debility as a result of her age; that for her condition her physician prescribed and administered to her by hypodermic needle defendant's estrogenic hormone shots, injected by him or a nurse; that they gave her two or three shots a week for about three years (during which time there is no evidence of any ill effects from the said injections). Finally, in August 1948, in order to save expense, Mrs. Tuscany testified that on Saturday, August 21, 1948, she purchased from a local pharmacy a vial of defendant's estrogenic hormones, opened the vial containing the drug, extracted therefrom some of the fluid, and herself injected it into her left arm by hypodermic needle; and at the expiration of about two days her left arm evidenced swelling, a knot; and about the middle of the following week, in like manner she injected more of the fluid from the vial into her right arm, with like result as the first; and about five days later she made a third injection into her left arm, with same result as before. She further testified that after the third aforesaid shot, her arms became swollen, started "weeping" through the pores of her skin a sticky fluid which itched and pained her. She further testified that in October–November, 1948, she took the vial containing the remaining contents to a Mr. W. F. Breaux, a U. S. Food and Drug administrator in Dallas, to be forwarded to Washington (presumably to the Pure Food and Drug Department) for analysis, but that she had never received a report of any analysis, and so far as she knows, Mr. Breaux still has the vial and contents. (No excuse was offered as to why Mr. Breaux was not called as a witness as to what report had been made, if any, or whether he secured a report from Washington, or received a return of the vial and its contents.) Mrs. Tuscany further testified that she was not a nurse and never had any nursing experience. She gave full details of her sterilization of the needle used in injecting the fluid and the precautions she took in preparation and in the making of the injections. Mrs. Tuscany's doctor testified that in September, following, he made a diagnosis of Mrs. Tuscany's condition and upon his examination, expressed opinion that the inflammation of the tissues was due to injections of estrogenic hormones she took while he was away; that he made no test of the serum, estrogenic substance, but that he determined that her ill-condition was due to the aqueous suspension in the estrogenic hormones she had been

using. A Dr. Blackburn testified that there is always danger of infection by a person self-injecting estrogenic hormones into his or her body by use of syringe and needle. His explanation of the danger was as follows:

"Well, bacteria are little germs that cause diseases and they cause what is commonly referred to as infection. And those little germs are on all of the surfaces of everything in this room and everything in the world, for that matter, that has not been sterilized, and those little germs introduced in the body by any means whatsoever will cause infection, infection being a disease itself. Some bugs cause one type of infection and other bugs cause another type of infection.

"Q. In the use of a syringe and needle does some care, or not, have to be used in using such an instrument? A. Certainly some care would have to be exercised; otherwise, infection would almost routinely occur.

"Q. Even where there is considerable care and where doctors exercise all the care that they can, do infections occur even then? A. Yes, sir, they do.

"Q. Ordinarily, in the practice, is it considered a safe practice for a layman to inject medicine into himself? A. Not ordinarily; no, sir."

On the other hand, as touching any negligence on the part of the defendant, a Mr. Dornbach, former branch manager of the defendant company, testified that he was familiar with the method followed by the Company in manufacturing and processing hormones, knew that certain tests are made and the results thereof are forwarded to Washington, D.C., for approval, and that the only ingredients in the vial containing hormones are estrone and estradial hormones and the aqueous suspension (a precipitate with water).

We are of the opinion that there is no evidence or finding that the defendant company did, or failed to do, anything that may remotely have caused the injuries sustained by Mrs. Tuscany, and no evidence that the defendant's estrogenic hormone solution or the vial itself contained any im-

purities; at most, the record merely raises a surmise or suspicion that there might, perhaps, have been some impurity in the drug or vial. On the other hand, the evidence is just as strong against the plaintiff that some infection was injected into Mrs. Tuscany's arm by her self-injecting the drug by hypodermic needle, as to cause the injuries to plaintiff's wife. Such being the state of the record, the judgment of the trial court should be affirmed; it is so ordered.