Charles P. GILLEN, Jr., and Charles P. Gillen III, a minor, by Charles P. Gillen, Jr., his guardian ad litem, Appellants,

v.

UNITED STATES of America, Appellee.

No. 16584.

United States Court of Appeals Ninth Circuit.

July 12, 1960.

Leslie C. Gillen, San Francisco, Cal., for appellants; Herbert Chamberlin, San Francisco, Cal., of counsel.

Lynn J. Gellard, U. S. Atty., Frederick J. Woelflen, Asst. U. S. Atty., San Francisco, Cal., for appellee.

Before HAMLEY and MERRILL, Circuit Judges, and EAST, District Judge.

EAST, District Judge.

This is an appeal from a judgment in favor of the United States of America (Appellee) in a wrongful death suit instituted under the Federal Tort Claims Act, 28 U.S.C.A. §§ 1346(b), 2671–2680, inclusive.

The jurisdiction of this court to review the judgment is sustained by 28 U.S.C.A. §§ 1291–1294. Charles P. Gillen, Jr., is the husband, and Charles P. Gillen III is the minor son (Appellants) of Josephine Cecelia Gillen who died at the Brooke Army Hospital, Fort Sam Houston, Texas, on January 6, 1956. The deceased had been, on December 19, 1955, duly admitted as a confinement patient to 3555th USAF Hospital, Perrin Air Force Base, Sherman, Texas, a facility owned and operated by the Appellee, being then a dependent of Appellant Charles P. Gillen, Jr., then a member of the Armed Forces.

On December 24, 1955, at about 1616 hours the deceased was delivered of a stillborn child and suffered post partum hemorrhaging (1,000 cc's of her normal blood volume), with attending shock, and that during the course of treatment of the deceased, at about 1630 hours, transfusions of whole blood were ordered and caused to be transfused into the veins of the deceased by treating medical personnel at said hospital. Subsequent to the transfusions, the deceased failed to rally, her condition worsened and she was transferred to Brooke Army Hospital on December 26, 1955, where she shortly died of a lower nephron nephrosis (degenerative disease of the kidney).

Appellants' complaint contains three claims, seeking damages personally and for and on behalf of the minor child and recovery of burial expenses. In each claim Appellants allege that the medical personnel of Perrin Hospital did negligently fail to properly determine the deceased's blood typing and did transfuse the deceased with incompatible blood and that the onset of the nephrosis and the following death of the deceased was the direct and proximate result of such negligence. The Appellee answered by way of denials of the alleged negligence and causation of the nephrosis and resulting death of the deceased. The case was tried on the pleadings, and both parties adduced their respective evidence. Evidence, consisting of hospital records, oral direct testimony, and expert medical testimony, was conflicting, particularly medical testimony. Following submission of the case on its entire record, the District Court made some 17 specific findings of fact and some six conclusions of law, upon which it based its judgment for the Appellee and against the Appellants.

Through 21 separate specifications of error, the Appellants challenged 10 of the specific findings, asserting error in that each attacked finding is clearly erroneous, unsupported by, and contrary to the evidence and the law, and further challenging four of the District Court's conclusions of law on the grounds that they are contrary to law and the evidence and, finally, asserting that the District Court erred in entering judgment accordingly and against the Appellants.

No good cause will be accomplished by a recital of each of the specific findings of fact except to relate generally that they find the facts to be contra to Appellants' assertions[1] in that the deceased was not transfused with incompatible blood[2] and that the onset of the

---

[1]. During the first transfusion, deceased received 350 cc's of Rh positive blood, causing a hemolytic transfusion reaction of Rh positive blood against her receiving blood type of Rh negative, resulting in acute renal (kidney function) insufficiency.

[2]. Deceased was Rh 'O' positive in blood grouping and Rh typing, and her transfusions consisted of the initial 350 cc's Rh positive blood and 3850 cc's of Rh 'O' negative blood, which is universal blood and could be given to and received by any individual.

nephrosis and resulting death of the deceased was not the direct result of any hemolytic transfusion reaction occasioned by the receipt of incompatible blood,[3] and that Appellants had failed to prove by a preponderance of the evidence that the Appellee's medical personnel had failed to exercise due care and proper skill in accordance with accepted and recognized medical techniques in the State of Texas. A study of the transcript of this case reveals that each and all of the District Court's specific findings of fact are supported by some substantial and competent evidence and that none of them are clearly erroneous.

Likewise, no office will be served from a recital of the four attacked conclusions of law, except Conclusion 3 which is dealt with later, other than to relate that the Court, in effect, concludes that the treating medical personnel at the Perrin Hospital proceeded in all respects with due care and skill and that deceased's death was not occasioned by nor the result of any negligence on the part of the employees of Appellee, and that the Appellee should have judgment. These conclusions are manifestly correct in view of the findings of fact.

The Appellants assert, in their Specification of Error No. 15, that:

"The District Court erred in concluding as a matter of law (Conclusion 3) that 'the res ipsa loquitur doctrine of that jurisdiction (Texas) cannot be invoked in favor of the plaintiffs in order to give rise to an inference of negligence on the part of the servants, agents, and employees of the defendant United States of America' (CT 56; 14–20), for the reason that the conclusion

is contrary to the law and the evidence."

In support of their position, the Appellants in their brief cite both Texas and California authorities dealing with the doctrine. However, they do not suggest that the District Court apparently applied the law of Texas (lex loci delicti), when it should have applied the law of California (lex fori).

Reminding ourselves, first, what the doctrine of res ipsa loquitur really is:

"[t]here is no magic to the doctrine of res ipsa loquitur. It draws nothing out of a hat for the avail of any litigant. It is a name which a chance remark of Baron Pollock caused to become attached to some select items of circumstantial evidence and the manner in which the courts recognized that (rational) reason may with propriety draw an inference of negligence from * * " (Such items of circumstantial evidence.)[4]

In another vein, it may be stated to be a rule of evidence, and when applied in a negligence action gives procedural aid to a plaintiff for the enforcement of a substantive right arising from the violation of a wholly disassociated and independent duty owed. It is enough, when applicable, to avoid a nonsuit or a dismissal. It is not, or it may be (depending upon whether the subject forum applies the "inference of fact" theory or the "prima facie," "legal presumption," or "burden to overcome" theory, respectively), enough to entitle the plaintiff to a directed verdict when the defendant offers no evidence.[5]

---

3. Hemorrhage loss of 1,000 cc's of blood and a manual removal of retained (12–13 days) placenta resulted in uteroplacental damage to the deceased. Medical testimony showed that lower nephron nephrosis could be caused by 12 physiological conditions, three of which are (1) transfusion reaction, (2) shock, and (3) uteroplacental damage.

4. Quoted from De Witt v. Rissman, Or., 346 P.2d 104.

5. Refer to Dean Prosser's work "Res Ipsa Loquitur in California," 37 Cal.L. Rev. 183.

In Texas (lex loci delicti), they say:

"The weight of the inference of negligence under the rule of res ipsa loquitur, because of resulting injuries, proximate cause, and contributory negligence, are matters for determination by the trier of facts. The fact that the occurrence here involved may warrant an inference or presumption of negligence, such does not compel it; that is, the unexplained or dubious injuries do furnish circumstantial evidence for the determination of the issue by the trier of facts, but do not necessarily impel acceptance as a proven axiomatic fact." [6] Tuscany v. United States Standard Products Co., Tex. Civ.App., 243 S.W.2d 207, 209.[7]

In California (lex fori), they say:[8]

"It is settled, of course, that res ipsa loquitur raises an inference, not a presumption, and the general rule is that whether a particular inference shall be drawn is a question of fact for the jury, even in the absence of evidence to the contrary. [Citing cases.] This, however, does not preclude the conclusion that res ipsa loquitur may give rise to a special kind of inference which the defendant must rebut, although the effect of the inference is somewhat akin to that of a presumption. [Citing cases.]

" * * * A similar burden has been placed upon defendants in other cases where there were special relationships between the parties. [Citing three medical patient cases.]

\* \* \* \* \* \*

"It is our conclusion that in all res ipsa loquitur situations the defendant must present evidence sufficient to meet or balance the inference of negligence, * * * ". Burr v. Sherwin Williams Co., 1954, 42 Cal. 2d 682, 268 P.2d 1041, 1044.

In view of our holding to follow, it is not necessary to determine in this cause whether the doctrine is to be applied and dealt with as declared by the "lex loci delicti" or the "lex fori," as the end result in this cause is the same under either.

We hold that there is no merit of Appellants' Specification of Error No. 15 as a matter of law. The District Court did not deprive the Appellants of the benefit of the doctrine as declared by either Texas or California by the entry of an order of dismissal upon the close of Appellants' case, but on the contrary, submitted all issues of fact arising under all of the evidence adduced by both the Appellants and the Appellee to the "trier of fact" (Court) for determination.

Now, treating this attacked "Conclusion 3" of the Court as a finding, we likewise hold the Specification of Error without merit. This identical question was presented to this Court in White v. United States, 9 Cir., 1952, 193 F.2d 505, Circuit Judge Pope writing the opinion,

---

6. This is in line with the majority of the decisions which are heavily in favor of the rule that res ipsa loquitur creates a permissible inference (factual presumption) only. Dean Prosser, supra.

7. 28 U.S.C.A. § 1346(b).

8. The general rule is that the lex loci delicti determines substantive rights, while the lex fori prevails in matter of remedial procedure. 15 C.J.S. Conflict of Laws § 22(c), Torts, p. 951, and (i) Evidence, p. 955; F.R.Civ.P., Rule 43, 28 U.S.C.A.; Lykes Bros. S.S. Co. v. Es-

teves, 5 Cir., 1937, 89 F.2d 528, app. from District Court, S.D.Tex., p. 530.

"It is a well-established exception, however, that where a substantive right is created by the lex loci delicti and as an integral part of the right a presumption of evidence is also created in aid of the enforcement of the right, such presumption is regarded as a matter of substance and will be given effect in the forum where redress is sought when not in conflict with public policy in that jurisdiction and no practical obstacle appears." Lykes Bros. S.S. Co. v. Esteves, supra [89 F.2d 530].

held adversely to the appellant. In this case, the plaintiffs sought to hold the Government negligent in its operation and maintenance of an irrigation water canal, and therefore liable for a breakage thereof and resulting failure to deliver water to plaintiffs. The District Court found, inter alia, that:

> "The plaintiffs (appellants) failed to prove by a preponderance of all of the evidence that the defendant failed to exercise (the necessary) degree of care."

The appellants in that case, as here, contended that

> "The Court erred in failing to give them the benefit of the rule of res ipsa loquitur."

The Court accepted appellants' contention

> "that the conditions for the application of that rule were all present. * * * " [9]

We paraphrase some language of White, commencing on page 507. The Oregon Court says that res ipsa loquitur gives rise to an inference of negligence permissible but not mandatory and that it does not raise any presumption of law. Here we add that neither Texas nor California say that the doctrine raises any presumption of law. Continuing our paraphrase, here the trial judge was weighing the evidence in much the same manner as a jury might do. We think that when he found res ipsa loquitur not applicable he was doing no more than a jury might do when it declines to draw a merely permissible inference or when in weighing the evidence concludes that the appellee's evidence was sufficient to at least meet, balance or outweigh the inference of negligence. We think the Court simply found that not only the direct testimony but the circumstantial evidence with all the dignity given it by res ipsa loquitur as well, were insufficient to establish negligence on the part of the appellee.

Since we think that "Conclusion 3" was rational under the evidence and also not clearly erroneous, the judgment must be affirmed.

---

9. We note, in connection with the Court's statement

"This contention must be tested by 'the law of the place where the act or omission occurred * * * '"—(at page 507) that the lex loci delicti and the lex fori were one and the same—District of Oregon.