REGAN, Judge.
Plaintiff, Miss Adele Maroun, a passenger, instituted this suit against the defendant, New Orleans Public Service, Inc., endeavoring to recover the sum of $79,269.50 as damages for personal injuries sustained by her at about 11:45 P.M. on February 21, 1950, as a result of being thrown to the floor when an omnibus, owned by the defendant, was brought to a sudden stop by the operator thereof.
The defendant answered admitting the occurrence of the accident, but denied liability therefor, asserting that an emergency was created when a pedestrian “recklessly ran from the neutral ground of St. Bernard across the roadway and directly in front of the bus”, which necessitated an “emergency stop” in an effort to save the pedestrian’s life; therefore, the defendant’s operator was absolved of negligence since he exemplified the characteristics of ordinary prudence when confronted with the foregoing emergency.
From a judgment in favor of the plaintiff in the sum of $1,000, both plaintiff and defendant have prosecuted appeals.
The record reveals that plaintiff, a woman fifty-four years of age, accompanied by her niece, Mrs. J. M. Moore, boarded defendant’s omnibus at the intersection of Canal and Rampart Streets, on Carnival night, February 21, 1950, at about 11:30 p. m.; they seated themselves on the first cross seat on the left side of the bus; the sky was overcast and a slight rain was falling; as the omnibus neared the intersection of St. Bernard Avenue and Duels Street, the operator thereof applied the brakes forcibly and turned its direction from the center of the roadway towards the sidewalk of St. Bernard Avenue and simultaneously brought it to a sudden skidding stop; the plaintiff, in consequence *399 thereof, was thrown from her seat across the aisle where she struck her head upon a steel stanchion and then fell back into the aisle of the vehicle.
Plaintiff contends that she incurred as an immediate result of the accident the following injuries:
“Injuries to her teeth and mouth.
“Abrasions and contusions of the head, face, neck, body, right leg, knee and ankle, left leg, knee and ankle, the lower vertebral area and associated sprains of the lumbar zone and cervical region.
"Severe shock.”
and subsequently she manifested as an ultimate effect from the cause thereof:
“Marked exacerbation and aggravation of a quiescent and dormant arthritic condition in both knees and in the lumbar, cervical and dorsal vertebra areas, and a precipitation of symptoms thereof.
“Marked aggravation and disturbance of developmental abnormalities and changes in the lumbar, cervical and dorsal vertebral areas.”
Defendant, in resisting the foregoing demand, insists that an “emergency, not of its own making, existed, causing a sudden application of the brakes with the resulting fall of the plaintiff” and, therefore, it is not liable. Defendant finally asserts that if the court should find that the facts do not justify the application thereto of the “emergency doctrine” then recovery should be limited to the immediate injuries sustained by the plaintiff.
The only questions, which the pleadings and evidence have posed for our consideration are ones of fact and these are — was the suddqn. stopping of the omnibus due to the creation of an emergency through no fault.of ,the operator and, of course, the measure of damages incurred by the plaintiff?
It is well settled that the emergency doctrine applies to a public carrier and will exculpate it from negligence when the emergency arises through no fault of its own. Wayne v. New Orleans Public Service, Inc., La.App.1951, 52 So.2d 55. However, the trial judge expressed the opinion that the defendant failed to prove this special defense and our examination of the record reveals no error in this conclusion.
In view of the fact that counsel for defendant has failed to prove its special defense; has conceded the occurrence of the accident and that plaintiff’s immediate injuries resulting therefrom were in conformity with the findings of the trial court, we now pass to a consideration of plaintiff’s final claim that the accident caused a personality ’change in addition to actuating or aggravating her hypertrophic arthritis and a congenitally weak back to such an extent that she has incurred . permanent injuries in consequence thereof.
We have no doubt that where a personal injury aggravates an existing ailment, or disease, or induces the progress or development of a latent one, the person whose negligence caused the injury is liable to respond in damages for the activation of the disease as well as .for the initial injury. Castelluccio v. Cloverland Dairy Products Co., 7 La.App. 534; Behan v. John B. Honor Co., 143 La. 348, 78 So. 589, L.R.A. 1918F, 862. However, the medical evidence adduced on the trial hereof very convincingly preponderates to the effect that the intervening accident did not activate any pre-existing illness or orthopedic defect possessed by the plaintiff. In fact, the record reveals a reasonable medical explanation for the personality change and innumerable aches and pains complained of by the plaintiff in that' her menopause occurred shortly after the_ accident, the endocrinological ramifications of which we deem it unnecessary to discuss here.
The trial court awarded to plaintiff damages for clothes, medicine, doctor bills, injury to teeth, pain, suffering and shock *400 in the amount of $1,000. We think this award does substantial justice.
For the reasons assigned the judgment appealed from is affirmed.
Affirmed.