HARDY, Judge.
This is an action for damages sustained by plaintiff while a fare-paying passenger of the defendant bus line, attributable to the latter’s negligence. From a judgment in favor of plaintiff in the principal sum of $250.00, he prosecutes this appeal.
While en route from Bastrop, Louisiana, to Beaumont, Texas, on August 7, 1959, a large suitcase, dislodged from an overhead baggage rack, struck plaintiff on the right side of his neck and upper shoulder, allegedly causing bodily injuries. Arriving in Beaumont late in the afternoon, plaintiff contends that his condition grew progressively worse, and on the following day he consulted a physician. Because of his physical distress plaintiff flew from Beaumont to Monroe on August 10th and was transported by ambulance to the More-house General Hospital, where he was placed under the care of his regular physician, Dr. Garret of Bastrop. Plaintiff’s asserted injuries are divided into (1) pains in the chest, abdomen, neck, shoulder and right arm caused by the physical impact of the falling suitcase, and (2) aggravation of a duodenal ulcer evidenced by both the vomiting of blood and the passage thereof from the rectum. ■
The nominal award of damages allowed by the judgment was based upon the somewhat superficial injuries sustained to the right side of plaintiff’s face, neck and shoulder. In the absence of any appeal or answer to the appeal on the part of defendant, the consideration of negligence as the cause of the above injuries, and the award made in compensation thereof is precluded, and the only issue with which we are confronted by this appeal is the determination of the effect of the accident, if any, with respect to the exaggeration of the plaintiff’s abdominal ulcer.
The district judge rendered a detailed written opinion and we quote the portion *60 thereof directly bearing upon the above stated issue, in extenso, as follows:
“The plaintiff contends that the suitcase striking him on the right side of the neck and shoulder caused such misapprehension, fear, worry and anxiety as to cause his pre-existing ulcer to become active and bleed, resulting in pain, suffering, hospital and doctors’ bills. Therefore, the next matter to be decided is as to whether or not the accident aggravated the preexisting ulcer so as to result in the pain and suffering as alleged by the plaintiff.
“Dr. Jack Rawls, physician in Bastrop, testified that he had known the plaintiff for approximately 27 years and had treated him up until 1J4 years prior to the trial of the case. Most of the time he saw the plaintiff, he had a peptic ulcer. He had not seen the plaintiff since April of 1959 and that plaintiff had had the ulcer for approximately twenty years; that the ulcer was chronic and that the plaintiff had episodes of bleeding frequently. The doctor further testified that sometimes when an ulcer starts bleeding, it is difficult to say what starts it but that the accident could have started the ulcer to bleeding.
“Dr. W. V. Gamier, a physician of Bas-trop, had never treated plaintiff, but stated that the bleeding of the ulcer could have been caused by the accident; that sometimes an ulcer starts bleeding and there is no way to determine what caused it.
“Mr. John Gray, an insurance adjuster in Beaumont, Texas, testified that he was notified by the station agent of the accident plaintiff had on the bus about 9 :00 p. m. on the night plaintiff arrived in Beaumont. Mr. Gray stated that he interviewed the plaintiff and from his outward appearance he seemed to be alright. The plaintiff seemed to be worried over the fact that his son was supposed to meet him in Beaumont but had failed to do so. He was told by the plaintiff that a suitcase had fallen on his head and that he, Mr. Gray, had offered to get him a doctor that night, but the plaintiff stated he preferred not to see a doctor that night, but if he did not feel better he would go to the doctor the next day. Mr. Gray further testified that he left the plaintiff at the bus station and the next day called his son’s home and was informed by someone at the home that the plaintiff had gone to the hospital with his son. Mr. Gray stated that he called Dr. Alexander and asked him to go to the Baptist Hospital and give the plaintiff medical attention if he needed it.
“Dr. H. E. Alexander of Beaumont testified by deposition that he examined plaintiff on August 8, 1959, at the request of John R. Gray at the Baptist Hospital in Beaumont. At that time plaintiff was complaining of injury to his head, the right side of his neck and right shoulder, radiating down to his wrist, but there were no objective findings to his head, shoulder or neck. The doctor testified that the plaintiff’s blood count was normal and there was no evidence whatsoever that the plaintiff had had a hemorrhage or was bleeding from an ulcer. He gave no statement to the doctor about vomiting or passing blood. Dr. Alexander further testified that he examined plaintiff on August 10, 1959. An X-ray was made of his right shoulder which was negative. The doctor also stated that he gave the plaintiff a physical examination and that there was no mention to him of any bleeding or vomiting. The doctor made another blood .count and stated that the count was normal. The doctor further testified that as his blood count was normal, that indicated that the plaintiff had no hemorrhage and that in his opinion there was nothing in connection with his accident that would indicate any serious injury.
“Dr. F. H. Hammonds, a general practitioner in Monroe, testified that he examined plaintiff the first time on October 8, 1959. He stated that the history the plaintiff gave him is as follows:
“1 * * * the sequence of events involved and the best I could find out was that he was riding a bus on August 7th at approximately 3 :00 or 3:30 P.M., the bus *61 was going to Beaumont; he presumed that a suitcase lying on the rack above, across the aisle from him, was thrown out of the carriage and struck him on his right shoulder and the right side of his neck. The weight of the suitcase was not known by the patient and he is unable to recall the exact sequence of events following his alleged injury. * * *
“ ‘The next recall that the patient had was that of a fellow passenger bathing his face with some type of antiseptic and the patient presumed that he had only received a slight jar from the suitcase. * * *
“ ‘However, before daylight on August 8th, he developed severe pain in his stomach and then vomited bright red blood. He was seen by a doctor in Beaumont, Texas and was told that they would get X-rays the following Monday. Apparently his people were not satisfied with this suggestion and he was seen by another doctor Saturday night after his condition worsened and he was told to take the treatment given by the original physician and X-rays would be taken Monday. Sunday night the patient’s condition continued to worsen and he was put in the hospital Monday A.M. and X-rays were made for broken bones. Apparently there was no definitive diagnosis made and at that time it was decided by either the patient or relatives of the patient to have him brought to his physician in Bastrop, Louisiana for medical treatment.
“ ‘On the 10th of August he was flown back from Beaumont, Texas, apparently by private aircraft and was taken to Bastrop General Hospital, where he was seen by his family physician and hospitalization was carried out. I presume that this patient’s condition was serious and the exact state of affairs apparently had not been recognized by anyone concerned until admission to Bastrop General Hospital.
“ ‘Douglas states that in May of this year he was seen by Dr. Flood Garrett, his physician in Bastrop, for a “stopped up head”, also, at that time he was complaining of some type of vague abdominal discomfort and the exact diagnosis was not known. The patient states that he has had no black bowel movements in the past,, except those associated with the present illness. He had a prostate operation done by Dr. Burchall Liles of this City, six or seven years ago. The exact nature of which is not known to me. He states that the first of this year he did have a rather severe stomach cramps and abdominal pain, the exact diagnosis is not known.’
“The doctor further testified that the plaintiff did not state to him that he had had a duodenal ulcer for twenty years. The doctor further stated that he examined the plaintiff again on July 5, 1960 and that the ulcer was still present and that a physical examination was substantially negative and that he found no residual injury or pathology as a result of the said accident which occurred on August 7, 1959. It was the doctor’s opinion that the blow he received on his shoulder, head and neck did not cause his bleeding, nor did it contribute to it.
“Dr. H. F. M. Garrett testified that he saw the plaintiff in April of 1959 in reference to his blood pressure, his stomach and his heart. At that time he discussed the plaintiff’s ulcer. He treated plaintiff again on July 14, 1959. The next time he saw plaintiff was August 10, 1959. At that time he was weak and upset, vomiting blood and passing blood through his bowel movements. The doctor was of the opinion that the blow which the plaintiff received did not cause his ulcers to bleed. He stated :
“ ‘Well first I’d like to point out one thing, I don’t think that the blow caused Douglas pain from this suitcase. I don’t think that caused anything to burst and bleed. It’s not a mechanical thing. It’s a neurological reaction, or psychomotor reaction. It involves the stress produced when Douglas became confused and upset.’
“The doctor further testified- that the suitcase could have triggered the bleeding.
*62 “The evidence of the witnesses in this case clearly shows that the plaintiff failed to say anything to Dr. Alexander in Beaumont about vomiting or passing blood and to the contrary, Dr. Alexander’s testimony was that his blood count was normal. No one, other than plaintiff, testified that he was vomiting blood or passing blood while away from Bastrop. Dr. Rawls stated that for many years the plaintiff had had an ulcer and that it bled frequently. During these times nothing could be pinpointed as causing his ulcer to bleed. It could have been worry, diet, stress, tension, anxiety.
“The plaintiff testified that on his way home he vomited blood and it was necessary for the nurse to give him a small cup, but this witness was not put on the stand, nor was her deposition introduced.
“Dr. Garrett stated that in his opinion the accident could have triggered the bleeding but that it could have been caused by something else.”
Our examination of the record discloses ’ no error either as to the factual findings as above stated by the district judge or the conclusions drawn therefrom.
In brief before this court, distinguished counsel for plaintiff have insistently urged the psychosomatic nature of plaintiff’s injury which allegedly reactivated and exaggerated the assertedly dormant or latent ulcer from which he had suffered for many years. In support of their argument counsel called the court’s attention to pertinent observations from the Lawyer’s Medical Cyclopedia and emphasized the medical opinion testimony on the point that the accident could, or possibly would, cause the reactivation of a dormant ulcer. From our jurisprudence in support of this position the following authorities are cited: Maroun v. New Orleans Public Service, La.App., 83 So.2d 397 (erroneously cited in counsel’s brief 88 So.2d 937); Peppers v. Toye Bros. Yellow Cab Co., La.App., 198 So. 177; Land v. Colletti, La.App., 79 So.2d 641.
We have no quarrel with the pronouncements from the medical texts, the opinions of the expert medical witnesses, nor the principles enunciated by our jurisprudence. Nonetheless, all of these statements, opinions and legal pronouncements can be applied only if the facts of a given case justify such application. In the instant case the district judge was of the opinion that plaintiff had failed to establish his claim by the requisite preponderance of the evidence. We can only say that our examination of the record accords with such a finding.
Conceding the general medical proposition that worry, stress, emotional excitement, etc., are sufficient to cause the reactivation of a dormant physical condition from which plaintiff is shown to have been suffering, we cannot find that the evidence in the instant case justifies the requisite causal connection between the accident and the subsequent condition.'
The brief of plaintiff’s counsel describes him as being a man some 63 years of age, “ * * * apparently a chronic worrier who was more or less emotionally upset and had been for several years because of this worry and anxiety he developed a bad ulcer condition.”
As pointed out by the district judge, there are numerous insufficiencies in the evidence produced on behalf of plaintiff which raise a serious question as to the validity of a number of occurrences to which he testified, and which could have been corroborated by other witnesses who were not produced. To conclude that plaintiff’s anxiety with respect to a minor accident was (1) the cause of the aggravation of an ulcer, and (2) directly related to the effect of the accident itself, would, in our opinion, constitute purely and simply a speculative and unjustified presumption, totally insufficient to serve as the basis for a judicial conclusion.
For the reasons assigned the judgment appealed from is affirmed at appellant’s cost.