[No. 22615.   Department One.   March 3, 1931.]

WALTER PHILLIPS, *Respondent*, v. O. O. HARDGROVE
*et al., Appellants*, CARL MATTSON, *Defendant*.[1]

*Trumbull, Severyns & Trumbull* and *John M. Wilson,* for appellants.

*Griffin & Griffin* and *Wm. J. Conniff,* for respondent.

MAIN, J.—This action was brought to recover for the death of a child, the daughter of the plaintiff. The cause was tried to the court and a jury, and a verdict was returned in favor of the plaintiff and against the defendant Carl Mattson in the total sum of $3,650, and in favor of the other two defendants. The plaintiff moved for a new trial as to the defendants O. O. Hardgrove and the school district. This motion was sustained, as recited in the order granting a new trial, on the ground that there had been error in the instruc-

[1]Reported in 296 Pac. 559.

tions by which the case was submitted to the jury. From the judgment granting a new trial, the defendants Hardgrove and the school district appeal.

The facts necessary to present the questions to be determined may be briefly stated. The appellant School District No. 62 is a district in Clallam county, and it had employed the appellant Hardgrove to convey the school children to and from the school in what is generally known as a school bus. The bus used by Hardgrove had a door at the rear which was operated by a lever near the driver's seat. There was another door at the right hand side in front.

September 20, 1928, the children were being conveyed from the school to the points where they usually alighted for the purpose of going to their respective homes. On the bus were Katherine Phillips, six years of age, a daughter of respondent, and her two brothers, aged, respectively, nine and eleven years. The bus stopped, headed west on the Olympic highway, after pulling to the right of the traveled portion of the road, for the purpose of permitting the Hardgrove children, and probably one or two others, to alight from the bus.

At this time an automobile, driven by Carl Mattson, was approaching from the west. The day was clear, and the accident happened about four o'clock in the afternoon. When the bus stopped, Hardgrove opened the rear door; Katherine Phillips first alighted, followed by her brothers, and she immediately started across the highway to the south for the purpose of going to her home, which was on that side of the road. While crossing the road she was struck by the automobile driven by Mattson, and sustained injuries from which she subsequently died.

The action, as above stated, was brought to recover for her death. It is admitted that Hardgrove was the

agent of the school district. The case was submitted to the jury upon the theory of ordinary care, and not upon the theory of the degree of care ordinarily applied to a carrier of passengers.

█ The first question is whether a school district, which operates a bus for the conveying of children to and from school, is required to exercise ordinary care or the highest degree of care consistent with the practical operation of the bus. If the district is required to exercise only ordinary care, then the case was properly submitted to the jury; on the other hand, if it is required to exercise the degree of care which is required of carriers of passengers generally, the court correctly granted the motion for new trial.

In *Redfield v. School District No. 3;* 48 Wash. 85, 92 Pac. 770, it was held that, by reason of two sections of the statute. (Rem. Comp. Stat., §§ 950, 951), the school district was liable for the negligent acts or omissions of its officers or agents in the performance of their duties. In that case the accident happened in the school room. In *Howard v. Tacoma School District No. 10,* 88 Wash. 167, 152 Pac. 1004, the defendant was held liable for negligence in the care and maintenance of the manual training equipment; in *Kelley v. School District No. 71,* 102 Wash. 343, 173 Pac. 333, the district was held liable for the care and maintenance of play ground equipment; and in *Stovall v. Toppenish School District No. 49,* 110 Wash. 97, 188 Pac. 12, the defendant was held liable for an accident occurring upon the school ground.

In all of those cases, and some others that might be cited, the court applied the rule of ordinary care. In the case now before us, the school district operated the bus, through its agent, for the carriage of passengers, school children, and the question, as already

indicated, is whether it should be held to the same degree of care as other carriers of passengers.

The rule that carriers of passengers should be held to exercise the highest degree of care consistent with the practical operation of the means of conveyance used, arises out of the nature of the employment, and is based on the grounds of public policy. In *Northern Pacific R. Co. v. Hess,* 2 Wash. 383, 26 Pac. 866, it is said:

"It is a fundamental principle of the law pertaining to passenger carriers that those thus engaged are under an obligation, arising out of the nature of their employment, and on grounds of public policy, to provide for the safety of passengers whom they have assumed for hire to carry from one place to another. Public policy and safety require that they be held to the greatest care and diligence in order that the personal safety of passengers be not left to chance or the negligence of careless agents; that, although the carrier does not warrant the safety of passengers against all events, yet his undertaking and liability as to them go to the extent that he, or his agents where he acts by agents, shall, so far as human care and foresight can go, transport them safely, and observe the utmost caution characteristic of careful, prudent men; that he is responsible for injuries received by passengers in the course of transportation which might have been avoided or guarded against by the exercise upon his part of extraordinary vigilance, and this caution and vigilance must necessarily be extended to all agencies or means employed by the carrier in the transportation of passengers."

In *Pennsylvania Co. v. Roy,* 102 U. S. 451, it is said:

"The court only applied to a new state of facts, principles very generally recognized as fundamental in the law of passenger carriers. Those thus engaged are under an obligation, arising out of the nature of their employment, and, on grounds of public policy, vigorously enforced, to provide for the safety of passengers whom they have assumed, for hire, to carry from one

place to another. In *Philadelphia & Reading Railroad Company v. Derby* (14 How. 468), it was said that when carriers undertake to convey persons by the powerful and dangerous agency of steam, public policy and safety require that they be held to the greatest possible care and diligence,—that the personal safety of passengers should not be left to the sport of chance, or the negligence of careless agents. This doctrine was expressly affirmed in *Steamboat New World v. King,* 16 id. 469.''

The foregoing excerpt was quoted with approval by this court in *Williams v. Spokane Falls etc. R. Co.,* 39 Wash. 77, 80 Pac. 1100.

In *Indianapolis & St. Louis R. Co. v. Horst*, 93 U. S. 291, with reference to the rule of the degree of care of carriers of passengers, it was said:

''The standard of duty should be according to the consequences that may ensue from carelessness. The rule of law has its foundation deep in public policy. It is approved by experience, and sanctioned by the plainest principles of reason and justice. It is of great importance that courts of justice should not relax it.''

In the cases cited the carriage was for hire, but that is not the controlling consideration upon which the rule is based. In *Edwards v. Burke,* 36 Wash. 107, 78 Pac. 610, the rule of the highest degree of care was applied to the owner of an office building in the operation of an elevator therein. In that case, there was quoted with approval from Thompson on the Law of Negligence, volume 1, page 980, under the subject head ''Degree of Care Required in the Construction and Operation of Passenger Elevators,'' the following:

'' 'Modern judicial authority assimilates the legal status of the owners or occupiers of buildings who construct or operate passenger elevators therein, whereby persons are conveyed from one story in the building to another, to that of a common carrier of passengers and imposes upon such persons the same extraordinary

obligation of care and skill; . . . The reason for this rule need not be enlarged upon. Obviously there can be no distinction between a general undertaking to carry passengers vertically and the similar undertaking to carry them horizontally. The carrier in each case is the bailee, so to speak, of human beings, and has their lives in his custody.' "

In some of the cases it is said that one reason for the rule of care which is applied to passenger carriers, is that the passenger has not the same opportunity to protect himself as in other situations where the rule of ordinary care is applied. If a school district is liable for the failure to exercise ordinary care with reference to the school buildings, school grounds, and manual training equipment, there would appear to be no reason why it should not, when it engages in the carrying of passengers by a school bus, be required to exercise the same degree of care that is exercised by passenger carriers generally. If the rule of the highest degree of care arises, as all the authorities say, from the nature of the employment, and on the grounds of public policy, there is no reason why it should not be applied to a school district, the same as any other passenger carrier. Certainly, school children are entitled to the same degree of care as are adults.

It is said that, in operating the school bus, the district is engaged in a governmental function, and, for this reason, the rule of the highest degree of care should not be applied. The same argument could be made, and has been made, against holding a school district liable for ordinary care with reference to the matters already mentioned. As pointed out in *Redfield v. School District, supra,* the liability of the district is created by statute, and the common law rule has been abrogated in this state. It would not be profitable to review decisions from other jurisdictions, because, aside from the state of California, the court of

last resort in no other state has held a school district liable to the same extent as it has been held in this state.

It requires no argument to demonstrate that the operator of the bus is also required to exercise the highest degree of care. The trial court rightly granted the motion for new trial.

■ It is further contended that the court erred in granting a new trial, because, under the evidence, no other verdict than the one returned could have been rendered. Little need be said upon this question. If the operator of the bus, without any warning, opened the rear door for the children to alight, as he testified he did on the day of the accident, knowing that they would immediately cross the highway to the south, and knowing (or in the exercise of a proper degree of care he should have known) that an automobile was approaching rapidly from the west, it cannot be said that as a matter of law he was not guilty of negligence. In *Machenheimer v. Falknor*, 144 Wash. 27, 255 Pac. 1031, it is said:

"Upon behalf of the school district, it is claimed that its obligations ceased when Fred stepped out of the bus onto the ground without being injured. It cannot lawfully set down or permit the children to get off, with one side of the bus beyond the middle of a narrow traveled way on a popular highway without any warning or precaution for the safety of the children and escape the charge of negligence to be submitted to a jury under proper instructions by the court."

The judgment will be affirmed.

TOLMAN, C. J., MITCHELL, HOLCOMB, and PARKER, JJ., concur.