REGAN, Judge.
■ Plaintiff, Mrs. Lillian L. Wayne, instituted this suit against the defendant, New Orleans Public Service, Inc., endeavoring *56 to recover the sum of $29,047.75, as damages for personal injuries sustained by her when a passenger on an electrically driven omnibus, owned by the defendant and operated by an employee, on November 17, 1948, at 5:45 p.m., as a result of being thrown to the floor when the omnibus was brought to an unexpected stop by the operator-thereof.
Defendant answered admitting the accident, but denying liability therefor, averring that an emergency was created when a “jaywalking” pedestrian “with no notice or warning whatsoever”, stepped into the path of the omnibus, which necessitated an “emergency stop” in an unavailing effort to save the pedestrian’s life, and that defendant’s operator was not guilty of' negligence in the premises, since he acted as a person of ordinary prudence confronted with such an emergency would act under the prevailing circumstances.
The court, a qua, rendered judgment in favor o-f defendant and “reluctantly” dismissed plaintiff’s suit. Hence this appeal by plaintiff.
The records reveals that plaintiff, an elderly lady, sixty-three years of age, accompanied by her sister, Miss Luther, boarded defendant’s omnibus at the uptown river corner of Carondelet Street, near the intersection of Poydras Street, on November 17th, 1948, at 5 :45 p. m. It was dark and “the peak hour of traffic” at this intersection, which connotes that several vehicles were stopped abreast of each other, with a succession of cars behind them awaiting a favorable traffic signal.
Immediately after paying their fares, plaintiff and her sister proceeded to obtain seats three or four rows behind the operator of the omnibus. However, before plaintiff was seated, the operator started the forward motion of the vehicle toward Canal Street, at about fifteen miles per hour, across Poydras Street, and in the right traffic lane of Carondelet Street, and had moved some ten to twenty feet in Caronde-let Street from Poydras Street, when the operator simultaneously “jammed on the brakes” of the omnibus and swerved the steering mechanism slightly to, the left, causing plaintiff to be violently thrust to the floor thereof, which resulted in the serious injuries of which she complains.
The record reflects that the reason for this unexpected stop of the omnibus was because a pedestrian, named Burton, now deceased as a result of the accident, endeavored to thread his way acoss traffic congested Carondelet Street, from the lake to the river side thereof, at a point thirty to thirty-five feet from the intersection of Poydras Street. He found himself in a position of peril in the left traffic lane of Carondelet Street, by virtue of the fact that another vehicle was bearing down upon, him, which to avoid striking him swerved1 left, and he then darted from this position directly into the path of the omnibus. The right front section of the omnibus, about: one foot from the corner thereof, struck: the pedestrian, knocking him to the ground', when he lay about three or four feet to the-right and in front of the omnibus.
The record further reflects that the operator of the omnibus first. observed the pedestrian’s perilous position when he was-about twenty-five feet “in front of the bus”; that the omnibus was moving at a speed of approximately fifteen miles per hour and could not be brought to a stop in-less than thirty-five or forty feet according to the testimony of the operator, or in less than forty-seven' feet as the expert witness, S. H. McAfee, testified.
Plaintiff contends that the operator was. negligent in not swerving the omnibus, further to the left, as he could easily- have-done, as conceded by defendant’s own expert witness, and, therefore, he would have avoided the situation which necessitated', “jamming on the brakes” resulting in the-injuries to plaintiff. The operator of the omnibus testified “yes, if he had been another foot I would have missed him.”
Defendant maintains that the operator of' the omnibus “swerved his bus as far as possible to the left without endangering, or killing the passengers in his bus, by precipitating his bus sideways into and through-the wall of traffic.”
Plaintiff further contends that ordinarily the plaintiff assumes the burden of proving-his case by a preponderance of evidence,. *57 however, when the plaintiff shows that she is a paid passenger on a common carrier the 'burden shifts to the defendant and it must then show absolute freedom from negligence; that even if the court was not convinced that the negligence of the bus driver had been established, the case would still be with the plaintiff, who made out a prima facie case of injury while occupying the status of a paid passenger.
Defendant, in opposition thereto, maintains “that a public carrier of passengers for hire is not an insurer of its passengers, and that in order to exculpate itself from liability as a result of an accident, in which it has participated, that it is only necessary for it to demonstrate its freedom from negligence.”
The trial court was of the opinion “that an emergency was created and existed for the reason that Mr. Burton, the deceased, darted from the front of an automobile proceeding in front and to the left of the bus, into the path of the bus, causing the driver thereof to suddenly jam his brakes and swerve slightly to the léft. * * * The driver of the bus had no reason to anticipate or believe that a pedestrian would suddenly dart into its path, and, in the court’s opinion, acted as an ordinary prudent individual would act under the circumstances. The court ■ is of the opinion that the driver of the bus was not negligent.”
We have carefully examined the record and we find no error in the conclusion reached by the trial judge.
It is well settled under our jurisprudence that the “emergency doctrine” applies to public carriers of passengers for hire and will serve to exculpate them from situations where emergencies have, arisen through no fault of theirs and accidents ensue.
In the case of Oppenheim v. Toye Bros. Yellow Cab Co., La.App., 7 So.2d 420, 424, this court was of the opinion that:.
“It is well established that there is no liability in a public carrier where the accident results from an emergency created ■entirely by causes for which the carrier is not responsible. In Upton v. Bell Cabs, Inc., et al., La.App., 154 So. 359, 363, we said:
“ ‘There is also a rule of law that, if one is confronted with a sudden emergency which is not in any way brought about 'by his negligence, he is not liable even if it is subsequently shown that by acting differently under the circumstances the accident would have been avoided. Mitchell v. Ernesto, et al., [La.App.,] 153 So. 66, decided by this court March 12, 1934, and authorities cited therein.’ ”
In Teche Lines, Inc. v. Gorum, 202 La. 993, 13 So.2d 291, 293, the Supreme Court was of the opinion that: “An automobile driver who, by the negligence of another and not by his own negligence, is suddenly placed in an emergency and compelled to act instantly to avoid a collision or injury is not guilty of negligence if he makes such a choice as a person of ordinary prudence placed in such a position might make, even though he did not make the wisest choice and one that would have 'been required in the exercise of ordinary care, but for the emergency.”
For the reasons assigned the judgment appealed from is affirmed.
Affirmed.