Hattie MATTOX, Appellant,

v.

C. R. ANTHONY COMPANY, Appellee.

No. 6287.

Court of Civil Appeals of Texas.

Beaumont.

June 18, 1959.

Rehearing Denied July 15, 1959.

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

Griffith & Thomas, Beaumont, for appellant.

Strong, Moore, Pipkin, Strong & Nelson, Beaumont, for appellee.

McNEILL, Justice.

Appellant Mrs. Hattie Mattox of Newton, her nine year old niece, and a maid on April 20, 1957, were shopping in the Beaumont store owned and operated by appellee C. R. Anthony Company. The store is a two-story structure and for the benefit of customers it has a stairway and in addition an escalator, both of which reach from the first to the second floors. The escalator is a moving structure of steps which operates at an angle between the first and second floors, a distance measured along the escalator of about 65 steps.

On the occasion in question appellant and her companions decided to ride the escalator from the first to the second floor. While riding the escalator she claims that it jerked, thereby causing her to fall and sustain injury. Her petition alleged certain specific counts or grounds of negligence, and in addition pleaded that the escalator was under the exclusive control and management of appellee and that it was well aware of the defects in said escalator and the accident in which she was involved but that she could not more particularly allege the defects therein, all of which were well known to the appellee and therefore she relies on the doctrine of res ipsa loquitur. Appellee denied the allegations in this petition and pleaded negligence on the part of appellant, and other grounds of defense not necessary here to mention.

Upon the trial appellant testified that she was 58 years of age, that she and her companions were in appellee's store on the date mentioned doing some shopping and deciding to go to the second floor they entered the escalator, the child preceding her by two steps and after the escalator had moved appellant four or five steps upward it suddenly jerked to such an extent that she lost the grip of her left hand on the left-hand rail and fell backwards, her head striking at the place where the escalator steps come up out of the floor and that as she lay there the steps kept striking her head; that she screamed and called to her maid and told her to hold up her head so that the steps would not strike her head. She stated that she continued to hold onto the right moving handrail but had to turn loose occasionally to keep from being carried upward and that as she lay there her dress became caught in the steps and thereby pulled around her waist. She stated that the escalator continued to operate for about five minutes after she fell; that

it operated until her niece reached the second floor, and in another place she testified that it kept operating for a minute or two. The maid testified to substantially the same effect. She stated that she heard the escalator make an unusual sound and saw it jerk and the child fall or lose balance temporarily and appellant fall. She stated that she caught hold of appellant's shoulder and held her head up so that it would not be struck by the steps coming up out of the floor. The maid also said that it seemed a long time before they stopped the escalator. Appellant placed Mr. Clyde E. Young, Manager of the store, on the stand as an adverse witness. It was brought out by him that appellee owned and operated the escalator and that it was under the exclusive control and management of appellee; that he was under strict instructions from the company to watch over the escalator and in the event of any defective operation being called to his attention it was his responsibility to see that the escalator was repaired; that he had been manager of the store some two or three years and had occasion to observe the operation of this escalator over that period of time, and that it had always functioned perfectly and had had no complaints. He stated that at the time of the incident in question he was about 30 or 40 feet away from the escalator, that a clerk called to him that a person had fallen on the escalator and that he immediately ran to the switch which was on the wall about three feet from the lower end of the escalator and stopped it. Mr. Young further testified that after the button or switch is pressed the escalator will coast four or five feet before it stops; that he helped appellant up and applied some mercurochrome as first aid to her left elbow. Mr. Young further testified that after this incident the escalator continued to run and be used and that it was used that day, both before and after the incident. He testified that the escalator operated all right and that they had periodic inspections of the escalator and its mechanism, and that the last one was around March 17th preceding the date of the accident.

When appellant had concluded her primary case, appellee moved for an instructed verdict and, after argument, the court granted the motion, and this case therefore is before us as a result thereof. In face of an instructed verdict we are required to view the evidence most favorably toward appellant in passing upon the questions involved.

Appellant's brief asserts in a single point that the trial court erred in withdrawing the cause from the jury and granting a peremptory instruction. She contends in this brief that the evidence was sufficient to go to the jury upon four counts of negligence. Because of our view expressed hereinafter under the doctrine of res ipsa loquitur which requires a reversal and remand of this cause, we will not attempt to set out these counts of alleged negligence nor the evidence in support of each, but state that we do not believe that proof under any of these four counts required submission thereof to the jury.

Appellant strongly urges that she raised the issue of negligence in her pleadings under the doctrine of res ipsa loquitur. Appellee counters with the well recognized general rule that the mere fact an accident happens is no proof of negligence. There is an exception to this rule in some, but not all, cases involving res ipsa loquitur. However, for this exception to apply it is necessary to show that the thing which caused the injury complained of must be under the management and control of defendant, and the accident must be such as in the ordinary course of things does not happen if those who have management or control use proper care. Wichita Falls Traction Co. v. Elliott, 125 Tex. 248, 81 S.W.2d 659. There is no evidence in the present record which would indicate the cause of the escalator to jerk. We have simply the testimony that for two or three years it had worked perfectly and this was the first instance of its misbehavior. But the fact that it had functioned properly for this period of time and suddenly was caused to jerk and make

an unusual sound is in itself some evidence that there was want of care on the part of appellee. Gammage v. Gamer Co., Tex. Com.App., 209 S.W. 389.

■■ We think the operators of escalators in retail mercantile establishments for the convenience of and use by their customers, while not common carriers, are required to use the high degree of care required of common carriers of passengers. This rule has been held to apply to operators of elevators. City Nat. Bank v. Pigott, Tex.Civ.App., 270 S.W. 234; Dulaney Inv. Co. v. Wood, Tex.Civ.App., 142 S.W.2d 379; O'Connor v. Dallas Cotton Exch., Tex.Civ.App., 153 S.W.2d 266. While the duty of ordinary care to see that his premises are reasonably safe is ordinarily owed by the proprietor of a retail business to his invitees in the premises, which areas usually are made up of steps, stairways and floors upon which the average person daily walks, yet we think instrumentalities such as elevators and escalators are upon a different footing. These are not simple everyday devices the average person operates or understands, except superficially. They are moving machines that may, because of neglect, get out of repair and suddenly cause serious injury to one lawfully upon them who would have no prior notice or knowledge of a defect and therefore of the immediate risk he may be taking. S. S. Kresge Co. v. McCallion, 8 Cir., 58 F.2d 931. The standard of care of carriers of persons therefore applies to passenger escalators situated and used as was that of appellee.

■ It is stated in Galveston, H. & S. A. R. Co. v. Thompson, Tex.Civ.App., 116 S. W. 106, at page 110, that the derailment of a passenger train itself affords reasonable evidence, in the absence of explanation, that the accident arose from want of care and that the case belongs to that class where the very nature of the accident, of itself, through the presumption that it carries, supplies the requisite proof of negligence. Or stated another way, the character of

the accident and the circumstances in proof attending it may be such as to lead reasonably to the belief that, without negligence, it would not have occurred. Washington v. Missouri, K. & T. Ry. Co., 90 Tex. 314, 38 S.W. 764.

■ Unexplained unusual jerks or bumps causing passengers in railroad cars to be thrown down and injured are sufficient, in and of themselves, to raise an issue of negligence under the res ipsa loquitur doctrine. The cases of Missouri, K. & T. R. Co. of Texas v. Stone, 58 Tex.Civ.App. 480, 125 S.W. 587 and Quanah, A. & P. R. Co. v. Johnson, Tex.Civ.App., 159 S.W. 406 have so held. We quote the following from the Stone case, 125 S.W. at page 588:

"The testimony, being uncontroverted, established the facts that Mrs. Stone was a passenger in a coach of appellant, which was to transport her from San Antonio to Sherman; that the car was moved with sufficient violence to hurl Mrs. Stone against the arm of the chair she was occupying, and other passengers to the floor of the car, and some had glasses knocked off. No explanation of the shock received by the car was made by appellant. The car was its property, which it knew was occupied by its passengers, and the car was moved in such a manner as to evidence carelessness and a disregard for the safety and comfort of the occupants. When these facts appeared, a prima facie case of negligence was shown, and the burden rested on appellant to show the circumstances that would exonerate it from blame in that connection."

In support of this holding the court then stated:

"as said by the Supreme Court in Mexican Cent. Railway Co. v. Lauricella, 87 Tex. 277, 28 S.W. 277, 47 Am. St.Rep. 103: 'It is a reasonable and sound doctrine that when a passenger is injured by an accident, such as the

derailment of a train, where the track and train are entirely under the control of the company—that is to say, where they are not interfered with by any extraneous force—a presumption of negligence arises, and that in order for the company to exonerate itself from liability for the injury it must adduce evidence to show that the accident could not have been avoided by the exercise of the utmost care and foresight reasonably compatible with a prosecution of its business.'"

This holding of the Supreme Court was reaffirmed in Dowdy v. Southern Traction Co., Tex.Com.App., 219 S.W. 1092 (opinion expressly approved).

■ While no doubt the bump or blow in the Stone case was much stronger than the jerk in the instant case, the result brought about was the same. And though in the one case human agency brought about the bump while in the present case some defect or malfunction of the automatic machinery may have brought it about, the duty of the carrier in either case was the same. The escalator was under the exclusive control of appellee, it knew it was occupied by its passengers (customers) and it moved in such a manner as to cause them injury. These facts create a prima facie case of negligence requiring appellee to show circumstances that would exonerate it from blame in that connection.

The following cases, in addition to those above cited, support the view that appellant has raised the issue of negligence against appellee under the rule of res ipsa loquitur. Washington v. Missouri, K. & T. Ry. Co., 90 Tex. 314, 38 S.W. 764; Wichita Falls Traction Co. v. Elliott, 125 Tex. 248, 81 S.W.2d 659. The following authorities apply the rule in escalator accidents similar to the present one: Hesemann v. May Dept. Stores, 225 Mo.App. 584, 39 S.W.2d 797; Welch v. Rollman & Sons Co., 70 Ohio App. 515, 44 N.E.2d 726; Young v. Anchor Co., 239 N.C. 288, 79 S.E.2d 785; 152 A.L.R. 562; Hartnett v. May Dept. Stores Co., 231 Mo.App. 1116, 85 S.W.2d 644.

Appellee relies principally upon the case of Tuscany v. U. S. Standard Products Co., Tex.Civ.App., 243 S.W.2d 207 to refute the presumption of negligence against it under res ipsa loquitur. There Tuscany's wife had injected into her body by hypodermic needle a drug manufactured by the drug company which injection caused her to suffer injuries. The Court said the facts shown were just as consistent with the hypothesis that Mrs. Tuscany's injuries were caused by some act of her own as that they were caused by the defendant. We think that statement differentiates the case from the present one. The evidence before us indicates that appellant Mrs. Mattox had hold of the moving handrail on each side as she moved upward when the escalator jerked. We have been pointed to nothing in the record and we have found nothing there which would indicate she was not acting prudently.

The judgment of the trial court is reversed and the cause is remanded.