146 So.2d 428 (1962)
Rupert E. SEPULVADO et al., Plaintiffs-Appellees-Appellants,
v.
GENERAL FIRE & CASUALTY COMPANY et al., Defendants-Appellants-Appellees.
No. 685.
Court of Appeal of Louisiana, Third Circuit.
November 5, 1962.
Rehearing Denied November 28, 1962.
Certiorari Denied January 14, 1963.
*430 Joseph R. Bethard, Charles L. Mayer, Shreveport, for defendants-appellants-appellees.
John P. Godfrey, Many, for plaintiffs-appellees-appellants.
Before FRUGÉ, SAVOY and CULPEPPER, JJ.
FRUGÉ, Judge.
This is a tort action instituted by Rupert E. Sepulvado and his wife, Mrs. Helen Quarles Sepulvado, seeking damages for the death of their nine year old son, Kenneth Woodrow Sepulvado. Plaintiff, Rupert E. Sepulvado also seeks to recover the amount expended by him for certain medical expenses and funeral expenses for his son. The defendant, General Fire & Casualty Company is the liability insurer of Thomas Sepulvado, a school bus driver. The other defendants are Mrs. Raymond Ebarb and her husband Raymond Ebarb and their liability insurer, American Insurance Company.
From a judgment awarding Rupert E. Sepulvado $5,179.30 and plaintiff, Helen Quarles Sepulvado $4,500, defendants General Fire and Casualty Company and American Insurance Company have filed and perfected suspensive appeals. Defendant, Mrs. Raymond Ebarb perfected a devolutive appeal. Plaintiffs have likewise appealed devolutively limited to that portion of the judgment which rejected their demands against Raymond Ebarb and also asking that the award be increased to $15,679.30 for Rupert E. Sepulvado and $15,000 for Mrs. Sepulvado.
This action arises from an accident which occurred on October 6, 1960, about three miles west of Zwolle, Louisiana on a gravelled highway (Louisiana State Highway 1215) at a point where it is intersected from the south by a small dirt road. This highway is commonly known as the Blue Lake Road and the dirt road, as the Martinez Road. Kenneth Sepulvado was a passenger in a school bus that was owned and operated by Thomas Sepulvado, who was proceeding in a northerly direction on the dirt road shortly before the accident occurred. The school bus was brought to a stop in the immediate proximity of the south edge of the *431 Blue Lake Road for the purpose of discharging several school children, including the deceased. Mrs. Ebarb was driving her automobile in an easterly direction and another automobile was proceeding in a westerly direction on the Blue Lake Road as the school bus approached and stopped at the intersection. After stopping very close to Blue Lake Road, the driver opened the door of his bus, which was located at the front and on the right-hand side, and allowed Kenneth Sepulvado and several other children to get out of the bus. Immediately after the west-bound car passed the front of the bus, Kenneth stepped out into the Blue Lake Road where he was struck by the automobile driven by Mrs. Ebarb.
The record disclosed that Thomas Sepulvado had originally been a party-defendant in this suit, and that before trial plaintiffs had dismissed the suit against him. Counsel for General Fire & Casualty Company urges that such dismissal, without reserving their rights against the General Fire & Casualty Company, operated as a discharge of the claim against it. It is true that under LSA-C.C. Art. 2203 the remission or conventional discharge in favor of one of several codebtors in solido discharges all the others, unless the creditor has expressly reserved his right against the latter. However, we are aware of no authority which supports the proposition that a mere dismissal of a suit against one party allegedly liable in solido releases all other parties to the suit. Vredenburg v. Behan, 33 La. Ann. 627. Furthermore, the remission of a debt under LSA-C.C. Art. 2199 must be conventional or tacit. In the case at bar, plaintiffs merely dismissed their suit as to one of the defendants. Such dismissal in no way remitted the obligation ex delicto which existed at that time. Plaintiffs had the right to sue any or all of the defendants originally named in this suit, and their failure to sue or the dismissal of suit as to any one allegedly liable in tort without a conventional or tacit release as to that party could in no way affect their rights as to the other parties. We therefore conclude that the trial judge was correct in rejecting this contention.
Turning then to the question of negligence on the part of Thomas Sepulvado, we make the following observations. It is well settled under the jurisprudence of this State that the owner and operator of a school bus falls in the category of public or common carriers. While a carrier of passengers is not an insurer, it is required to exercise the highest degree of care, vigilance and precaution for the safety of those it undertakes to transport and is liable for the slightest negligence. Coleman v. Continental Southern Lines, Inc., La.App., 107 So.2d 69; Rauscholb v. Continental Southern Lines, Inc., La.App., 81 So.2d 87.
General Fire & Casualty Company's insured was not only a common or public carrier, upon whom rested all of the duties as such, as above set forth, to exercise the highest degree of care; but certain special duties were imposed by his contract of employment with the Sabine Parish School Board. Pursuant to LSA-R.S. 17:16, authorizing the adoption of rules and regulations governing the operation of school buses, the State Department of Education promulgated Bulletin Number 785, which provides in part:
"When the bus has come to a stop in the right traffic lane, it shall be the duty of the driver to order his red flags displayed, both in the front and in the rear of the bus. As soon as traffic has stopped, he shall open the service door and allow his school bus safety patrolman to alight in order that he may assist other pupils who leave the bus at the stop, or to assist those who will board the bus.
"In discharging pupils from the bus, who must cross the highway, the responsibility of safe crossing rests with the driver." * * * (Tr. 34.)
The record discloses that the children left the bus when the door was opened *432 by the driver. No patrolman preceded them. In fact, the bus driver was still in the bus when the fatal accident occurred. Clearly this was negligence and a proximate cause of the accident. Adams v. Great American Indemnity Company, La.App., 116 So.2d 307.
It is urged that the driver of the bus was confronted with an emergency situation in that the deceased alighted from the bus before the driver could act. In support of this contention, we think counsel correctly states the law when he cites Wayne v. New Orleans Public Service, La.App., 52 So.2d 55, which announces that "[I]t is well settled under our jurisprudence that the `emergency doctrine' applies to public carriers of passengers for hire and will serve to exculpate them from situations where emergencies have arisen through no fault of theirs and accidents ensue." However, if such an emergency did exist in the case at bar, the bus driver certainly must take full responsibility for its existence. The door opening mechanism was controlled and operated by the driver. Therefore, before any child could depart from the bus, the driver had to open the door. He alone could open the door and in the case at bar did in fact open the door. Thus he cannot escape liability under the "emergency doctrine" when he in fact caused the emergency to exist. Accordingly, we find no merit to this contention.
As to the negligence of Mrs. Ebarb, the evidence establishes that she had a clear view of the road from a distance of four to five hundred yards west of the place of the accident. Had she been maintaining a proper lookout she would have seen the bus stopped right at the very south side of the road on which she was traveling. The record further discloses that her automobile skidded some 52 feet before coming to a stop. This is certainly indicative that she was traveling at an excessive rate of speed under the prevailing circumstances.
Under the provisions of LSA-R.S. 32:233 we find:
"The driver of any vehicle meeting or overtaking any school bus, stopped or about to stop for the purpose of receiving or discharging school children (the burden of determining which fact shall rest upon the driver of the meeting or overtaking vehicle), shall bring such vehicle to a complete stop at least ten feet in the rear or front of bus, and shall remain there, stationary, until any such child has boarded such car or bus or has alighted therefrom and reached the adjacent sidewalk or road side." * * * (Emphasis added.)
While we can find no Louisiana decision defining the word "meeting" in the above statute, it is stated in Blashfield, Cyclopedia of Automobile Law and Practice, Section 5412, that "in statute requiring vehicle overtaking or meeting school omnibus which has stopped to receive or discharge passengers, to stop until bus has moved or its driver has given signal for other vehicle to proceed, word `meeting' means to come together; to approach each other so as to arrive at the same place, as where roads meet; to come together as by approach from opposite or different directions; so that defendant who crossed in front of school bus at intersection where it had stopped to receive passengers was in violation of statute." It seems obvious to us that this is the only reasonable interpretation that can be given to the Louisiana statute. It is also obvious that Mrs. Ebarb violated the provisions of this statute, and that such violation was negligence and a proximate cause of the death of the Sepulvado child. Accordingly, we find Mrs. Ebarb and her insurer, American Insurance Company liable for the damages sued upon herein.
It is urged by all defendants to this suit that the deceased was contributorily negligent and that such negligence was the proximate cause of his death. A review of the jurisprudence of this State shows that no definitive rule can be laid down by which to determine the capacity of a child for observing and avoiding danger; and that the *433 application of the doctrine of contributory negligence of a child is to be determined in each case by considering not only his age but also all other factors bearing on his capacity, such as his intelligence, experience, the particular circumstances existing at the time of such accident, his discretion, alertness and the nature of the danger encountered. Arata v. Orleans Capitol Stores, 219 La. 1045, 55 So.2d 239; Delahoussaye v. City of New Iberia, La.App., 33 So.2d 75; Plauche v. Consolidated Companies, Inc., 235 La. 692, 105 So.2d 269. In the case at bar, the deceased child certainly had every reason to believe that traffic would come to a complete stop and remain stationary until he had safely crossed the road. We think that he could rely on the prudence of the bus driver and approaching motorists, considering the high degree of care required of them under our law. Therefore, after due consideration of the child's age and experience and the surrounding circumstances, we are of the opinion that the deceased was not contributorily negligent.
The last issue presented concerns itself with the liability vel non of Mr. Raymond Ebarb. His liability depends upon whether or not Mrs. Ebarb was on a community mission at the time the accident occurred. The record discloses that Mrs. Ebarb was returning home from a beauty operator when the accident happened. Use of the community automobile by a wife for her own recreation has been deemed a community activity by our jurisprudence. Brantley v. Clarkson, 217 La. 425, 46 So. 2d 614; Hardware Mutual Casualty Company v. Perez, La.App., 128 So.2d 703. The rationale of this rule is clearly set forth in the Brantley decision, supra, wherein it is stated:
"We are unable to make the distinction between the purpose of the mission of the wife as was made in Adams v. Golson as long as she is using the automobile belonging to the community with the express or implied consent of the husband. The wife is entitled to her own recreation, enjoyment and pleasures as well as the husband and the community owes her those things in the same manner as it owes her the food or the clothes she requires. If the husband, in using a car belonging to the community, commits a tort while on an errand in which he is to indulge in his own pleasures and recreation and thereby becomes liable, there is no reason which suggests itself why the same community, out of which the liability may have to be paid, should not likewise be liable for a tort committed by the wife under the same circumstances."
We therefore conclude that under the established jurisprudence Mrs. Ebarb was on a community mission at the time of the accident, and that her liability renders her husband, as head and master of the community, liable for the damages she caused.
As to the lower court's award of damages, we feel that $4,500 to each parent for the loss of the love, affection and companionship of their son, and mental pain and suffering is inadequate. In assessing the amount of damages, each case is to be determined on its own facts, with the desire, however, for the attainment of some degree of uniformity in cases involving similar injuries. See Thomas v. Great American Indemnity Company, La.App., 83 So.2d 485; Currie v. Government Emp. Ins. Co., La.App., 90 So.2d 482; Higginbotham v. Frazier, La.App., 92 So.2d 89; Matherne v. Crowther, La.App., 96 So.2d 89; Self v. Johnson, La.App., 124 So.2d 324. Considering the facts and circumstances of this case as well as recent awards in similar cases we are of the opinion that the judgment of the trial court should be amended so as to award each parent the sum of $7,000. See Randall v. Baton Rouge Bus Company, Inc., 240 La. 527, 124 So.2d 535; Fontenot v. Wood, 140 So.2d 34; Burnaman v. La Prairie, La. App., 140 So.2d 710. As to the amount of $679.30 special damages for medical and funeral expenses awarded by the trial court to Rupert E. Sepulvado we find no error *434 and therefore affirm this part of the judgment.
The record discloses that both defendant insurance companies have policy limitations of $5,000. As to these defendants our judgment is limited to this amount.
It is therefore, adjudged and decreed that the judgment of the district court be amended so as to award Rupert E. Sepulvado the sum of $7,679.30 and to award Helen Quarles Sepulvado the sum of $7,000; that Raymond Ebarb be cast in solido with the other defendants named therein for the above amounts; and in all other respects said judgment is affirmed; defendants to pay all costs of these proceedings.
Amended and affirmed.

On Application for Rehearing.
En Banc. Rehearing denied.