The CITY OF DALLAS and Dallas Transit
System, Petitioners,

v.

Ella JACKSON, Individually, and Ethylene
Johnson, Individually and As Next Friend
of Willie Mae Johnson, A Minor, Respond-
ents.

No. B–1743.

Supreme Court of Texas.

Jan. 21, 1970.

Rehearing Denied March 4, 1970.

Burford, Ryburn & Ford, James H.
Holmes, III, and Robert E. Burns, Dallas,
for petitioners.

Berman & Fichtner, Jay S. Fichtner and
W. W. Mitchell, II, Dallas, for respond-
ents.

McGEE, Justice.

Plaintiffs, surviving heirs of M. C. John-
son, sought to recover damages pursuant
to the provisions of the Wrongful Death
Statute, Arts. 4671–4678 Vernon's Ann.Civ.
Statutes of Texas. M. C. Johnson was shot
and killed by Claudell Banks, another pas-
senger, on a bus owned and operated by
the Dallas Transit System, a department
of the City of Dallas. The trial court rend-
ered judgment for the plaintiffs against
Claudell Banks, who did not appeal.

The trial court sustained the motion for
judgment non obstante veredicto filed by
the City of Dallas and Dallas Transit
System, and rendered judgment that plain-
tiffs take nothing against these defendants.
The Court of Civil Appeals (443 S.W.2d
771) held that there was no evidence of pro-
bative force to sustain the jury's answers
that the bus driver was negligent in per-

mitting Claudell Banks to enter the bus, and that such negligence was a proximate cause of the occurrence in question. We approve this holding, but the Court of Civil Appeals reversed and remanded the cause on the ground that the trial court erred in refusing to submit plaintiffs' requested issues relating to the negligence of the bus driver in failing to remove, restrain or eject Claudell Banks after he had become a passenger on the bus.

Writ of error was granted by this Court on First Point in the City of Dallas petition for writ of error:

"The Court of Civil Appeals erred in failing to affirm the trial court's judgment in its holding that the trial court should have submitted special issues to the jury concerning the restraint, removal or ejectment of Banks from the bus * * for the reason that under the circumstances as a matter of law, the Defendants, through their employee, fulfilled their duty and obligation to provide reasonable safeguards for the protection of their passengers through the act of their employee in going for the aid of law enforcement officials."

In Texas public transportation companies are not insurers of the safety of their passengers. The bus company, as a carrier of passengers, is under a duty to exercise such a high degree of foresight as to possible dangers and such a high degree of prudence in guarding against them, as would be used by a very cautious, prudent and competent man under the same or similar circumstances. Gulf, C. & S. F. Ry. Co. v. Conley, 113 Tex. 472, 260 S.W. 561, 32 A.L.R. 1183 (1924); International and Great Northern Railroad Co. v. Halloren, 53 Tex. 46 (1880).

We must determine whether the transit company fulfilled its legal duty to its passenger, M. C. Johnson, by the action of its bus driver in warning his passengers that they would have to "quieten down or get off the bus" and later in stopping his bus in order to seek police assistance.

Estimates of the number of passengers on the bus varied from eighteen to twenty-six. Banks had been a passenger on the bus for seven to nine blocks before the shooting occurred. After boarding the bus Banks had proceeded to the rear of the bus. Two witnesses testified that Banks was intoxicated and carrying a gun. The bus was stopping and picking up passengers after Banks had become a passenger. Banks created a disturbance in the back of the bus. A lady in the back of the bus was heard to say, "get off of me * * * or something like that." Banks thereafter started moving back and forth on the bus from one side to the other, talking and cursing. Banks "was telling about that he would kill, the way he was talking, he would kill anybody, anyone that messed with him. * * *" M. C. Johnson told Banks, "man, don't shoot that woman." Banks replied, "man, I'll shoot you too." Lester Manning, another passenger on the bus testified that Banks held the gun out a couple of times and then put it back inside his belt, but "he mostly kept his hands on it all the time." No one told the bus driver, Wilburn McDonald, that Banks was carrying a gun.

McDonald, the bus driver, testified that after the bus had gone a few blocks he heard two men arguing behind him, and "the further down the road he got, the louder they got," and that he had warned then to "quieten down or they would have to get off." After they ignored his warning, McDonald stopped the bus at a filling station in order to seek police assistance. He made this stop about two blocks after he had given his warning. Both of plaintiffs' witnesses recall the warning given by the bus driver. Lester Manning testified that Banks, in response to the bus driver's warning, threatened to shoot the bus driver also. After the bus driver had stepped off of the bus, Banks walked to the front of the bus, stopped, turned and shot M. C. Johnson.

We disagree with the holding of the Court of Civil Appeals to the effect that the question of whether the transit company fulfilled its legal duty to M. C. John-

**64**

son, under the facts and circumstances of this case was a *fact question.*

 There were many passengers on the bus. McDonald, the bus driver, knew that two men were arguing and that his warning to "quieten down or get off the bus" had been ignored. Strong-arm tactics on his part might lead to further altercation, endangering other passengers on the bus. We hold as a matter of law, under these circumstances, that the bus driver fulfilled his duty by stopping the bus after his warning had been ignored and by attempting to seek police assistance; and, that he owed no duty to remove, restrain, or eject Banks.

The judgment of the Court of Civil Appeals is reversed and the judgment of the trial court is affirmed.