The CITY OF HOUSTON, Appellant,

v.

Pauline MATTHEWS et vir, Appellees.

No. 17653.

Court of Civil Appeals of Texas,
Houston (1st Dist.).

June 19, 1980.

Rehearing Denied Aug. 7, 1980.

Robert M. Collie, Jr., City Atty., City of Houston, R. Burton Ballanfant, Senior Asst. City Atty., Houston, for appellant.

Aldrich & Buttrill, Gerald H. Buttrill, Houston, for appellees.

Before COLEMAN, C. J., and DOYLE and WALLACE, JJ.

DOYLE, Justice.

This is an appeal from a judgment awarding damages to Pauline Matthews for serious personal injuries she sustained when she fell on a sidewalk located in the City of Houston adjacent to a bus stop she planned to use for boarding a bus. The City argues that under the trial court's instruction it was required to exercise a high degree of care in maintaining the bus stop, where the law only required the use of ordinary care.

We reverse and remand.

Testimony showed that the sidewalk was in disrepair at the time of the accident. Further testimony showed that the area containing the sidewalk was a city bus stop, and had been so designated and used since 1957. Mrs. Matthews testified she and her mother were walking on the sidewalk for the purpose of catching a bus to downtown Houston when the accident occurred.

Trial was to a jury who answered seven special issues finding: that at the time and place of the occurrence in question the City of Houston had failed to maintain the bus stop in question in such reasonably safe condition as a city exercising a high degree of care would have done; that such failure was a proximate cause of the occurrence in question; that on the occasion in question Mrs. Matthews did not fail to keep such a lookout as a person using ordinary care would have kept; that such failure was not a proximate cause of the occurrence in question; and that Mrs. Matthews should be awarded damages in the amount of $112,000. The court entered judgment on the verdict and the City filed a motion for new trial or, alternatively, for remittitur. The City assigns five points of error.

By the first point of error, the City asserts the trial court, over its objection, erred in instructing the jury that the City of Houston had the duty to exercise a high degree of care to maintain the bus stop in question in a reasonably safe condition for the use of pedestrians using such bus stop. We sustain this point of error.

■ At the outset we deem it necessary to point out that before any duty arose on the part of the City to Mrs. Matthews in reference to her use of the bus stop, it was incumbent upon Mrs. Matthews to show the establishment of a passenger–carrier relationship between her and the City. The evidence shows that no such relationship ever came into existence. It is undisputed that the accident occurred on a public sidewalk as Mrs. Matthews approached the bus stop, with no bus approaching or waiting at the location in question. The relationship of passenger and carrier can exist only if there is a contract, expressed or implied, between the carrier (City) and the person transported (Mrs. Matthews). 10 Tex. Jur.2d, Carriers § 20.

In every case cited by Mrs. Matthews as authority for holding a common carrier to a high degree of care, the relationship of pas-

senger–carrier had been established or was continuing at the time of the accident. In *Ft. Worth & D.C. Ry. Co. v. Brown*, 205 S.W. 378 (Tex.Civ.App.–Amarillo 1918, no writ), the plaintiff was a passenger waiting to change trains in the railroad's depot when he suffered an injury from sitting in a defective chair. In *Ft. Worth & D.C. Ry. Co. v. Kidwell*, 112 Tex. 89, 245 S.W. 667 (1922), the plaintiff had purchased a ticket, left the station to attend to personal business and upon returning to the train, stepped into a depression on the railroad platform resulting in serious injuries. The passengers in *Texas New Mexico & Oklahoma Coaches, Inc. v. Williams*, 191 S.W.2d 66 (Tex.Civ.App.–El Paso 1945, ref'd w. o. m.), and *Houston Transit Co. v. Zimmerman*, 200 S.W.2d 848 (Tex.Civ.App.–Galveston, 1947, writ ref'd n. r. e.) were injured and killed, respectively, when struck by passing motorists after being discharged from busses. The courts in each of these cases found that the carriers had discharged the passengers in unsafe places and for those reasons the passenger–carrier relationship had not terminated.

■ There can be no doubt that Texas follows the general rule that a common carrier owes a high degree of care to passengers using its facilities, both rolling stock and premises. The *Brown* and *Kidwell* cases, supra; 10 Tex.Jur.2d, Carriers, § 40. However, no Texas cases have previously considered a similar fact situation as presented by this case and we can find no authority to support the contention that Mrs. Matthews, by her act of approaching the City's bus stop along a public sidewalk with the intention of becoming a passenger on one of its buses, had thus entered into an *express or implied contract to become a passenger on any of the City's buses.*

■ The general rule is that one becomes a passenger when he enters upon the premises of the carrier designated for use of persons intending to avail themselves of passage, with the intention, in good faith, of becoming a passenger, althouah he has not purchased a ticket. 10 Tex.Jur.2d, Carriers, § 25. In such instances, the courts will imply a contract from the control and actions of the carrier and the intended passenger and hold the carrier to the high degree of care standard as is due to persons actually aboard the carrier. *Texas & N.O. Ry. Co. v. Owens*, 299 S.W. 933 (Tex.Civ. App.–Waco 1927, no writ).

Obviously Mrs. Matthews had not subjected herself to any control by the City, nor was the City aware of any of her intentions. She had not yet arrived to wait for a bus; no bus was waiting at the stop; no money changed hands for passage; and no signals or indications of offer or acceptance for carriage had been communicated between the parties. Other than appellant's testimony that she intended to become a passenger, there is no evidence of an express or implied contract for carriage which is essential before the City is required to exercise a high degree of care.

■ Accordingly, we hold that no relationship of passenger–carrier arose between Mrs. Matthews and the City under the facts before us. Therefore, the instruction that the City of Houston had the duty to exercise a high degree of care in maintaining the bus stop, as to Mrs. Matthews, was erroneous. Absent the passenger–carrier relationship, the City was under a duty to exercise only ordinary care in constructing and maintaining the sidewalk where the accident occurred. *Stinnett v. City of Waco*, 180 S.W.2d 433 (Tex.1944); *City of Houston v. Barbare*, 451 S.W.2d 522 (Tex. Civ.App.–Houston [1st Dist.] 1970, writ ref'd n. r. e.); *City of Houston v. Boecher*, 411 S.W.2d 409 (Tex.Civ.App.–Houston [1st Dist.] 1967, writ ref'd n. r. e.); *City of San Antonio v. Chabot*, 318 S.W.2d 485 (Tex.Civ. App.–San Antonio 1958, writ ref'd n. r. e.).

The City's remaining points of error complain of certain procedural actions on the part of the trial court pertaining to requested special issues on negligence under the theory of ordinary care. In view of our holding which requires a remand, the trial court will be accordingly directed to submit the proper issues under ordinary care. To rule on these points at this time is therefore unnecessary.

The judgment of the trial court is reversed and the cause is remanded for a new trial.