**ESTATE OF Misty Dawn LINDBURG, Appellant,**

v.

**MOUNT PLEASANT INDEPENDENT SCHOOL DISTRICT and John Gullion, Appellees.**

No. 9553.

Court of Appeals of Texas, Texarkana.

Dec. 22, 1987.

Rehearing Denied Feb. 23, 1988.

Randell C. Roberts, Bruce L. Roberts, Loftis & Roberts, Tyler, for appellant.

Robert Weber, Atchley, Russell, Waldrop & Hlavinka, Texarkana, for appellees.

GRANT, Justice.

The estate of Misty Dawn Lindburg (hereinafter referred to as "the estate") brought a negligence action against Mount Pleasant Independent School District and school bus driver John Gullion. The suit was brought under the Texas Tort Claims Act, which allows recovery for injuries resulting from the use and operation of a motor vehicle. Tex.Civ.Prac. & Rem.Code Ann. § 101.001 et seq. (Vernon 1986).

The estate contends that the trial court erred in failing to instruct the jury that the driver owed a high degree of care instead of ordinary care to the child, Misty Dawn Lindburg. The estate further complains that the trial court erred in sustaining special exceptions to its first amended petition, in failing to grant its motion for leave to file a trial amendment, and in not admitting a deposition of the defendant bus driver into evidence.

Misty Lindburg was a seven and one-half-year-old child who was struck and killed by a pickup truck after getting off a school bus on October 18, 1984. At the time of her death, she was in the third grade at Mount Pleasant Independent School District and was daily transported to and from school by the school district's bus. She lived in a trailer park on the west side of U.S. Highway 271. There are two entrances to the trailer park, about forty yards apart. The bus driver testified that he normally stopped at both entrances. On the day of the accident, Misty had exited from the northbound school bus with one other student who lived on the east side of the highway. The bus driver testified that he knew that the other child (Jason Hinton) lived in a nearby house on the east side of the highway and would not need to cross it, but that he (the bus driver) did not know where Misty lived. Witnesses testified that Misty walked away from the bus without making any effort to cross the highway. The school bus drove away, and she began walking down the east side of the road toward the other entrance to the trailer park.

A driver of one of the cars following the school bus stopped and attempted to wave Misty across the highway. She refused to cross at that time, but did attempt to cross after the northbound line of cars which had

been stopped behind the school bus had passed. Misty was struck by a southbound pickup truck while crossing the highway and was killed. The driver, not a party in this case, testified that he had come over a hill and did not see Misty until he hit her.

The jury failed to find the school bus driver had been negligent in his operation of the bus, but found Misty Lindberg had been negligent in failing to keep a proper lookout.

The estate requested the following definitions (which were refused by the trial court):

"HIGH DEGREE OF CARE" means that degree of care which would have been used by a very cautious, competent, and prudent person under the same or similar circumstances.

"NEGLIGENCE," when used with respect to John Gullion, means failure to use a high degree of care; that is to say, failure to do that which a very cautious, competent, and prudent person would have done under the same or similar circumstances, or doing that which a very cautious, competent, and prudent person would not have done under the same or similar circumstances.

The trial court gave the following definitions to the jury:

"ORDINARY CARE," when used with respect to the conduct of John Gullion, means that degree of care which would be used by a person of ordinary prudence under the same or similar circumstances.

"NEGLIGENCE," when used with respect to the conduct of John Gullion, means failure to use ordinary care; that is to say, failure to do that which a person of ordinary prudence would have done under the same or similar circumstances, or doing that which a person of ordinary prudence would not have done under the same or similar circumstances.

The estate argues that the school bus should be considered a common carrier, and as such, it would be held to a high degree of care.[1] *City of Dallas v. Jackson,* 450 S.W.2d 62 (Tex.1970); *City of Houston v.* *Matthews,* 605 S.W.2d 628 (Tex.Civ.App.–Houston [1st Dist.] 1980, writ ref'd n.r.e.); *Estate of Lee,* 564 S.W.2d 392 (Tex.Civ.App.–Dallas 1978, writ ref'd n.r.e.).

A common carrier is defined as one who transports goods or people from place to place for hire without discrimination, for such persons who see fit to employ them. *Mayhew v. McFarland,* 137 Tex. 391, 153 S.W.2d 428 (1941); *Railroad Commission of Texas v. United Parcel Service, Inc.,* 614 S.W.2d 903 (Tex.Civ.App.–Austin 1981, writ ref'd n.r.e.); *Burnett v. Riter,* 276 S.W. 347 (Tex.Civ.App.–Beaumont 1925, no writ). The school bus in the present case transported only students of the Mount Pleasant Independent School District, and was not for hire to the general public without discrimination. Therefore the school district did not come within the common carrier classification.

We have examined the early Texas cases to determine why a high, rather than ordinary, degree of care was prescribed for common carriers. According to *Galveston City R. Co. v. Hewitt,* 67 Tex. 473, 3 S.W. 705 (1887), that duty arises from the hazardous character of the business and the fact that human life is imperiled by it. According to *International and Great Northern Railroad Co. v. Halloren,* 53 Tex. 46 (1880), a passenger, by reason of the risk naturally inherent to this mode of travel, has the right to demand that high degree of care and skill which very cautious persons generally are accustomed to. A duty of a high degree of care is also required for people who ride free as well as for the paying customers, because of regard for human life. *White v. St. Louis Southwestern Ry. Co. of Texas,* 86 S.W. 962 (Tex.Civ.App.1905, no writ); *G.C. & S.F. Ry. Co. v. McGown,* 65 Tex. 640 (1886).

Looking to other jurisdictions for the reasons for requiring the exercise of a high degree of care by a common carrier, we find the requirement has its foundation in the fact that the carrier assumes almost

---

1. Tex.Rev.Civ.Stat.Ann. art. 882 (Vernon 1964) provides that the duty of carriers are the same as provided by common law except where statutorily declared otherwise.

absolute control of the body and the movements of the passenger, and in the further fact that the passenger commits himself to the watchfulness of the carrier's servants. *Louisville & N.R. Co. v. Hensley,* 7 Tenn. Ct.App. 610 (as cited in 13 C.J.S. *Carriers* § 678, n. 75 (1939). Another reason given for applying the requirement to passenger carriers is that the passenger does not have the same opportunity to protect himself as in other situations where the rule of ordinary care is applied, and public policy and safety require that carriers be held to the greatest care and diligence in order that the personal safety of passengers is not left to chance or to the negligence of careless agents. *Phillips v. Hardgrove,* 161 Wash. 121, 296 P. 559 (1931).

We have not found any Texas cases that prescribe a standard of care for private or special carriers and passenger carriers not falling within the common carrier classification. We find that the Texas courts have extended the duty to exercise a high degree of care to carriers that transport passengers without requiring the carrier to fall strictly within the common carrier definition. For example, the high degree of care standard has been applied to elevators and escalators. *Brewer v. Otis Elevator Co.,* 422 S.W.2d 766 (Tex.Civ.App.–Houston [1st Dist.] 1967, writ ref'd n.r.e.); *Mattox v. C.R. Anthony Co.,* 326 S.W.2d 740 (Tex. Civ.App.–Beaumont 1959, writ ref'd n.r.e.).

▇ The states are divided on the question of the standard of care owed to a student who is a passenger on a school bus. A number of states have held that those engaged in the transportation of school children should be held to a high degree of care. *Van Cleave v. Illini Coach Co.,* 344 Ill.App. 127, 100 N.E.2d 398 (1951); *Lan-*dry v. Travelers Indemnity Co.,* 155 So.2d 102 (La.Ct.App.1963); *Sepulvado v. General Fire & Casualty Co.,* 146 So.2d 428 (La.Ct.App.1962); *Webb v. City of Seattle,* 22 Wash.2d 596, 157 P.2d 312 (1945); *Leach v. School District No. 322 of Thurston County,* 197 Wash. 384, 85 P.2d 666 (1938); *Lempke v. Cummings,* 253 Wis. 570, 34 N.W.2d 673 (1948).

We have examined the policy reasons for requiring a high degree of care by a common carrier, and we find no reason why the same policy should not apply to the operation of a school bus. A child riding in a school bus should be entitled to the same degree of care as that exercised for the benefit of a passenger on a common carrier.[2] A school child is not in a position to negotiate a contract containing the standard of care to be required of the bus driver. The school child may not have a choice as to the mode of transportation to and from school, and under the law, the child may be required to attend school until the child has reached the age of sixteen. Tex.Educ.Code Ann. § 21.032 (Vernon 1987). The mere fact that the school bus is not available as transportation for the public in general, but is limited to students of the school district, is not a reason for treating those passengers differently than the passengers on a common carrier.

The Texas Supreme Court in *City of Dallas v. Jackson* said:

> A bus company, as a carrier of passengers, is under a duty to exercise such a high degree of foresight as to possible dangers and such a high degree of prudence in guarding against them as would be used by a very cautious, prudent and competent man under the same or similar circumstances.

> There is no reason, in the nature of things, why the passenger should not be as safe upon one as the other. With proper vigilence on the part of the carrier, he is so. The passenger has no authority upon either, except as to the personal care of himself.... The public have no choice but to use it. The standard of duty should be according to the consequences that may ensue from carelessness.
>
> Although this case did not contrast a common carrier versus a private carrier, the same reasoning is applicable.

---

**2.** The United States Supreme Court in the case of *Indianapolis and St. Louis Railroad Co. v. Horst,* 93 U.S. (3 Otto) 291, 23 L.Ed. 898 (1876), determined that a high standard of care should be applied to a passenger accompanying his cattle on a freight train. The court stated:

> But, upon principle, why should not the law be so in this case? Life and limb are as valuable, and there is the same right to safety, in the caboose as in the palace car.... The same considerations apply to freight trains; the same dangers are common to both....

*City of Dallas v. Jackson,* 450 S.W.2d 62 (Tex.1970).

This standard encompasses a greater duty to anticipate the conduct of a young child and by doing so to protect them from harm. Especially because the passengers transported on a school bus are children, many of tender years, it is appropriate that we require the exercise of a high degree of care in protecting the children from harm. Because of the circumstances in this case, we find that the failure of the trial court to instruct the jury on a high degree of care is reversible error.

Because of our determination on this issue, we do not address the other points of error raised by appellant.

The judgment of the trial court is reversed and the case is remanded for a new trial in which the jury will be required to consider the conduct of the school bus driver in terms of having a duty of a high standard of care.

### ON MOTION FOR REHEARING

Appellee has on motion for rehearing raised for the first time on appeal the contention that the school district is not an appropriate party for suit, because of the doctrine of sovereign immunity. Mount Pleasant Independent School District now argues that this is not a situation which falls within the limited waiver of governmental immunity provided by the Texas Tort Claims Act. Tex.Civ.Prac. & Rem. Code Ann. § 101.001 et seq. (Vernon 1986 & Supp.1988).

Points of error raised for the first time on motion for rehearing may not normally be considered by this Court. It has been held that an exception to this rule exists when an appellee fails to advance an argument in his reply brief, because he is attempting to preserve the judgment of a lower court. *Chesshir v. First State Bank of Morton, Tex.,* 620 S.W.2d 101 (Tex.1981).

In the present case, however, appellant has failed to preserve error below for our review. The argument of sovereign immunity was raised by special exception and as an affirmative defense below, but the record does not reflect that any ruling on this contention was ever rendered by the trial court.

Special exceptions which are not called to the attention of the trial court or upon which the record does not show that the trial court acted are waived. *Saikowski v. Manning,* 720 S.W.2d 275 (Tex.App.—Fort Worth 1986, no writ); *Elliot Valve Repair v. B.J. Valve & Fitting Co.,* 675 S.W.2d 555 (Tex.App.—Houston [1st Dist.] 1984), *rev'd on other grounds,* 679 S.W.2d 1 (Tex.1985); *Rio Grande Valley Sugar Growers v. Campesi,* 580 S.W.2d 850 (Tex.Civ.App.—Corpus Christi), *rev'd on other grounds,* 592 S.W.2d 340 (Tex.1979); *Rothchild v. Fannin Bank,* 407 S.W.2d 878 (Tex.Civ. App.—Texarkana 1966, writ ref'd n.r.e.). Accordingly, nothing on this point has been preserved for review by this Court.

The appellees seek to distinguish some of the cases from other jurisdictions cited in our original opinion on the basis that the school buses were operated by the bus owners who contracted with the school districts rather than being owned by the school districts. The school children, who are passengers on the buses, are basically in the same situation whether the school district owns the buses or contracts with another for their services. We do not deem this distinction to be controlling as to the duty owed to the passengers.

Appellees also contend on the motion for rehearing that no duty was owed to the child, because the child had safely alighted from the conveyance and was no longer a passenger at the time of the injury. As the court stated in *Houston Transit Co. v. McQuade,* 223 S.W.2d 64 (Tex.Civ.App.—Galveston 1949, writ ref'd), "By law bus carriers are under the duty to discharge their passengers into a (reasonably) safe place...." Whether this was done in the present case is a question of fact for the jury.

The motion for rehearing is denied.